# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| National Fair Housing Alliance, Inc.; Savannah-Chatham County Fair Housing Council, Inc.; and Metro Fair Housing Services, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> S.C. Bodner Company, Inc.; MBA Construction, LLC; Steven C. Bodner; Retreat Apartments of Mobile, LLC; Huntsville Main Street Apartments LLC; Mountain Ranch Apartments LLC; Village at Rice Hope Apartments LLC; Pavilion Apartments at Plantation Way LLC; LBM Realty, LLC; Spring Lake Apartments Limited Partnership; Brooklyn Place TIC I, LLC; Brooklyn Place TIC II, LLC; Brooklyn Place TIC III, LLC; Brooklyn Place TIC IV, LLC; Brooklyn Place TIC V, LLC; Brooklyn Place TIC VI, LLC; Brooklyn Place TIC VII, LLC; Brooklyn Place TIC VIII, LLC; Brooklyn Place TIC IX, LLC; Brooklyn Place TIC X, LLC; Brooklyn Place TIC XI, LLC; Brooklyn Place TIC XII, LLC; Brooklyn Place TIC XIII, LLC; Brooklyn Place TIC XIV, LLC; Brooklyn Place TIC XV, LLC; Brooklyn Place TIC XVI, LLC; Brooklyn Place TIC XVII, LLC; Brooklyn Place TIC XVIII, LLC; Brooklyn Place TIC XIX, LLC; Brooklyn Place TIC XX, LLC; Brooklyn Place TIC XXI, LLC; Brooklyn Place TIC XXII, LLC; Brooklyn Place TIC XXIII, LLC; Brooklyn Place TIC XXIV, LLC; Brooklyn Place TIC XXV, LLC; Brooklyn Place TIC XXVI, LLC; Brooklyn Place TIC XXVII, LLC; Brooklyn Place TIC XXVIII, LLC; Brooklyn Place TIC XXIX, LLC; Reserve Apartments, LLC; Cross Lake Apartments, LLC; Twin Creek Apartments, LLC; Whispering Ridge Apartments LLC; Mountaineer Place Apartments, LLC; Village at Quail Springs Apartments, LLC; Morgan Overlook Apartments LLC; Morgan Crescent at Wolfchase Apartments LLC, <br><br> Defendants. | Case No. <br> 1:10-CV-0993-RLY-DML <br><br><br> **AMENDED** <br> **COMPLAINT** <br><br><br> **JURY DEMAND** |

## I.   INTRODUCTION AND SUMMARY OF CLAIMS

1.      This civil rights action is brought by the National Fair Housing Alliance and two of its members, Savannah-Chatham County Fair Housing Council, Inc., and Metro Fair Housing Services, Inc., against the builders, designers, and current owners of multifamily apartment complexes designed and/or built by S.C. Bodner Company, Inc., MBA Construction, LLC and Steven C. Bodner, for violations of the accessibility requirements of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 (hereinafter "FHAA"), 42 U.S.C. §§ 3601-3619.

2.      Since at least 1998, the Design/Build Defendants, who are later identified herein, have engaged in a continuous pattern or practice of discrimination against people with disabilities in violation of the FHAA by designing and/or constructing multifamily dwellings, and the common use and public use areas associated with those dwellings (hereafter referred to as "covered units" or "covered apartment complexes"), at six apartment complexes tested by Plaintiffs, in such a manner as to deny people with disabilities full access to, and the use of, these facilities as required under the FHAA.  The Design/Build Defendants' violations of the FHAA are serial and frequent, and continue more than 19 years after the effective date of the FHAA accessibility requirements.

3.      The Owner Defendants, who are the current owners of the six apartment complexes tested by Plaintiffs and who are later identified herein, have engaged in an ongoing and continuous pattern and practice of discrimination in the rental of dwellings, in violation of the FHAA, by offering for rent apartments which they knew or could have known, with the exercise of reasonable care, failed to provide the accessible and adaptable features required by the FHAA for persons with physical disabilities.  Consequently, these Defendants have made and

2

are making dwellings unavailable to people with physical disabilities and/or have discriminated against them in the terms, conditions or privileges of the rental of dwellings in violation of the FHAA.

4.      The Design/Build and the Owner Defendants' violations of the FHAA accessibility requirements have serious and significant consequences for people with disabilities. As outlined below, many complexes have features such as steps, accessible routes which can be blocked by parked cars, high thresholds, environmental controls beyond the reach range of wheelchair users, insufficient clear floor space in bathrooms for persons in wheelchairs to use the facilities, and insufficient centered clear floor space at kitchen sinks and bathroom lavatories for use by persons in wheelchairs.  There are public and common use areas with inaccessible features such as accessible parking spaces which lack the required signage to designate them as reserved for persons with disabilities, leasing office restrooms which lack grab bars and required clear floor space for persons with mobility impairments, and shower stalls that are not accessible for persons in wheelchairs due to their size – all in violation of the FHAA's accessibility requirements.  These blatant violations, and many others, effectively communicate that people with disabilities are not welcome at the Owner Defendants' properties.

5.      According to the 2004 American Community Survey conducted by the U.S. Census Bureau, more than 51 million Americans (nearly one in five) have some form of disability, and one in eight has a severe disability.  Of that number, more than 2.7 million people over the age of 15 years use a wheelchair, and that number is expected to increase as the population ages and medical care allows people with disabilities to live longer and fuller lives. Another 7 million use a cane, crutches, a walker or other mobility aid.  Accessible housing is an

essential means of ensuring that people with disabilities are able to fully participate in community life.

6.      A person using a wheelchair or other mobility aid is just as effectively excluded from the opportunity to live in a particular dwelling by steps, excessively high thresholds at building or unit entrances or by excessive running slopes on the route to covered units as by a posted sign saying "No Handicapped People Allowed."  In considering the 1988 disability amendments to the FHA, Congress stressed that enforcement of civil rights laws is necessary to protect people with disabilities from the "devastating" impact of housing discrimination, including the "architectural barriers" erected by developers and builders who fail to construct dwellings and public accommodations accessible to, and adaptable by, people with disabilities. H.R. REP. NO. 100-711, at 25 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2186.

7.      The Design/Build and the Owner Defendants' flagrant, systematic, and continuing violations of the FHAA have thwarted Congressional efforts to eradicate housing discrimination against people with disabilities, rendered units unavailable to people with disabilities, frustrated the missions of Plaintiffs, and caused Plaintiffs to divert their scarce resources in an attempt to redress these violations.  Enforcement of the FHAA against these Defendants is necessary because of the extensive and continuing nature of the civil rights violations at the numerous apartment complexes throughout the United States that have been designed and/or constructed and/or are being operated by them.

8.      To the date of this filing, Plaintiffs have also identified ten additional covered apartment complexes designed and/or built by Defendants Steven C. Bodner, S.C. Bodner Company, Inc. and MBA Construction LLC and currently owned by the Remedial Defendants, who are later identified herein.  On information and belief, these additional properties share

4

common design features with the tested apartment complexes and Plaintiffs have reason to believe that similar FHAA accessibility violations may exist at these properties as well. Plaintiffs request as a remedy, *inter alia*, that the Remedial Defendants be enjoined from refusing to permit any survey and, where necessary, any retrofits of their respective property that may be ordered by this Court to bring these properties into full compliance with the FHAA.

## II.   JURISDICTION AND VENUE

9.      This Court may exercise subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 2201 and 2202 and 42 U.S.C. § 3613(a).

10.     Venue is proper in the Southern District of Indiana pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events and omissions giving rise to these claims occurred in this District, and these claims concern or otherwise relate to real property located in this District.  In addition, most of the Defendants are either incorporated or doing business in the State of Indiana, and may be found in this District.

## III.   PARTIES

### A.    Plaintiffs

11.     Plaintiff National Fair Housing Alliance, Inc. ("NFHA") is a national non-profit public service organization incorporated under the laws of the Commonwealth of Virginia with its principal place of business at 1101 Vermont Avenue, N.W., Suite 710, Washington, DC 20005.  NFHA is a nationwide alliance of private, non-profit, fair housing organizations, including organizations in 28 states.  NFHA's mission includes advocating for the rights of people with disabilities to accessible housing.  NFHA is the only national organization dedicated

solely to ending housing discrimination and promoting residential integration. NFHA works to eliminate housing discrimination and to ensure equal opportunity for all people through leadership, education and outreach, membership services, public policy initiatives, advocacy, investigation of fair housing violations, and enforcement. One of NFHA's goals is the promotion of accessible housing; to that end, since 1992, NFHA has conducted nationwide educational campaigns to address accessibility in rental housing. Plaintiff NFHA conducted tests at Village at Rice Hope, Pavilion at Plantation Way Apartments, Summer Place Apartments, Brooklyn Place Apartments, Overlook at Golden Hills and Crescent at Wolfchase and found the violations which are later described herein.

12.     Plaintiff Savannah-Chatham County Fair Housing Council, Inc. ("SCFHC") is a private, non-profit community organization located at 7 Drayton Street, Suite 206, Savannah, Georgia 31401 and incorporated under the laws of the State of Georgia. SCFHC is engaged in the mission of promoting equal housing opportunities for people with disabilities and other protected classes. To this end, the activities that SCFHC engages include, but are not limited to: (1) investigating allegations of discrimination; (2) conducting investigations of housing facilities to determine whether equal opportunity in housing is being provided; (3) taking such steps as it deems necessary to assure such equal opportunity and to counteract and eliminate discriminatory housing practices; (4) providing outreach and education to the community, including housing providers and consumers regarding fair housing; and (5) monitoring and training housing providers that have previously engaged in discriminatory practices. Plaintiff SCFHC conducted tests at Village at Rice Hope and found the violations which are later described herein.

13.     Plaintiff Metro Fair Housing Services ("MFHS") is a non-profit community organization located in Atlanta, Georgia and organized under the laws of the State of Georgia.

6

Its mission is to promote social justice and eliminate housing and lending inequities for all people, including those with disabilities, through leadership, education and outreach, public policy advocacy, and enforcement.  During the past three years, MFHS has presented more than 30 workshops including disability rights and accessibility issues, and conducted more than 30 accessibility audits for the U.S. Department of Housing and Urban Development, Dekalb County and the Georgia Commission on Equal Opportunity.  In addition, MFHS conducts a number of outreach and enforcement programs to further the mission of promoting equal housing opportunities, including educating and assisting victims of discrimination, reviewing and investigating complaints, conciliation and advocacy, and publication of materials concerning the housing rights of people with disabilities and others.  Plaintiff MFHS conducted tests at Pavilion at Plantation Way Apartments and found the violations which are later described herein.

**B.    Design/Build Defendants**

14.    Defendant S.C. Bodner Company, Inc. is a corporation organized under the laws of Indiana with its principal place of business at 6010 W. 62nd Street, Indianapolis, Indiana 46278.  Either directly or through affiliated companies, S.C. Bodner Company, Inc. has been and continues to be in the business of developing, building, acquiring, managing and selling multifamily residential properties that are covered by the FHAA, including the properties listed in Appendix A.  In one or more of these capacities, S.C. Bodner Company, Inc. is responsible for the design and/or construction of the properties listed in Appendix A.  Defendant Steven C. Bodner, at all times relevant to this Complaint, was the president and an owner of Defendant S.C. Bodner Company, Inc.

15.    Defendant MBA Construction LLC ("MBA") is a limited liability company organized under the laws of Indiana with its principal place of business at 6010 W. 62nd Street,

Indianapolis, Indiana 46278.  MBA is affiliated with Defendant S.C. Bodner Company, Inc.

MBA, both in its current form and through its predecessor, MBA Construction Corp., an Indiana

corporation that is now inactive, has been and continues to be in the business of constructing

multifamily housing that is covered by the FHAA.  MBA, in its own capacity and as successor to

MBA Construction Corp., has constructed the multifamily housing listed in Appendix A.  In this

capacity, MBA is responsible for the design and/or construction of these properties.  Steven C.

Bodner, at all times relevant to this Complaint, was the managing member of MBA or the

president of MBA Construction Corp.; and, on information and belief, he is an owner of MBA.

16.     Defendant Steven C. Bodner is an individual, who both individually and as S.C.

Bodner Company, Inc., has engaged in the business of developing real estate.  During times

relevant to this case, Defendant Steven C. Bodner was also an owner and an officer of:  MBA

Construction LLC and its predecessor MBA Construction Corp.; Village at Rice Hope

Apartments LLC; Pavilion Apartments at Plantation Way, LLC; Brooklyn Place Apartments,

LLC, a now dissolved limited liability company; Summer Place LLC, a now dissolved limited

liability company; Overlook at Golden Hills Apartments, LLC; and Crescent at Wolfchase

Apartments, LLC.  In these capacities, Defendant Steven C. Bodner engaged in and/or was

responsible for the design and/or construction of Village at Rice Hope, Pavilion at Plantation

Way Apartments, Summer Place Apartments, Brooklyn Place Apartments, Overlook at Golden

Hills and Crescent at Wolfchase.  Hereinafter, Defendants Steven C. Bodner, S.C. Bodner

Company, Inc., and MBA Construction LLC are collectively referred to as the "Bodner

Defendants."

17.     Defendant Village at Rice Hope Apartments LLC ("Rice Hope") is a limited

liability company organized under the laws of Indiana, with its principal place of business at

8

6010 W. 62nd Street, Indianapolis, Indiana 46278.  It was the owner of the Village at Rice Hope Apartments, 203 Magnolia Boulevard, Port Wentworth, Georgia 31407 during the time of its design and/or construction; and, in this capacity, it is responsible for the design and/or construction of Village at Rice Hope Apartments.  It is also the current owner of the Village at Rice Hope Apartments.  In this capacity, it is responsible for leasing of dwelling units at Village at Rice Hope in a manner that complies with the FHAA and is an Owner Defendant.  As a current owner, Defendant Rice Hope is also a necessary party for the relief sought by Plaintiffs. Defendant Steven C. Bodner is a member of Defendant Rice Hope; and, on information and belief, he is also an owner of this Defendant.

18.     Defendant Pavilion Apartments at Plantation Way, LLC ("Pavilion") is a limited liability company organized under the laws of Indiana with its principal place of business at 6010 W. 62nd Street, Indianapolis, Indiana 46278.  It was the owner of the Pavilion at Plantation Way Apartments, 399 Plantation Way, Macon, Georgia 31210 during the time of its design and construction; and, in this capacity, it is responsible for the design and/or construction of Pavilion at Plantation Way Apartments.  It is also the current owner of the Pavilion at Plantation Way Apartments.  In this capacity, it is responsible for leasing of dwellings at the Pavilion at Plantation Way Apartments in a manner that complies with the FHAA and is an Owner Defendant.  As a current owner, it is also a necessary party for the relief sought by Plaintiffs. Defendant Steven C. Bodner is a member of Defendant Pavilion; and, on information and belief, he is also an owner of this Defendant.

### C.    Owner Defendants

19.    Defendant LBM Realty, LLC is a limited liability company organized under the laws of Indiana with its principal place of business at P.O. Box 55, Beverly Shores, Indiana 46301.  It became the owner of the Summer Place Apartments at 825 Summer Place Lane, Granger, Indiana 46530 on or about July 26, 2007.  It is also the current owner and, in this capacity, it is responsible for leasing of dwellings at Summer Place Apartments in a manner that complies with the FHAA.  As a current owner, it is a necessary party for the relief sought by Plaintiffs.

20.    Defendants Brooklyn Place TIC I, LLC through Brooklyn Place TIC XXIX, LLC are limited liability companies registered to do business in Indiana, with their principal place of business at 10808 Gainsborough Road, Potomac, Maryland 20854.  They became the owners of the Brooklyn Place Apartments at 6830 Brooklyn Court, Evansville, Indiana 47715 on or about April 25, 2005.  As the owners of Brooklyn Place Apartments, they are responsible for leasing of dwellings at Brooklyn Place Apartments in a manner that complies with the FHAA.  As current owners, they are also necessary parties for the relief sought by Plaintiffs.

21.    Defendant Morgan Overlook Apartments LLC is a limited liability company organized under the laws of Delaware with its principal place of business at 1170 Pittsford Victor Road, Suite 100, Pittsford, New York 14534.  It became the owner of Overlook at Golden Hills in Lexington, South Carolina on or about September 25, 2008.  As the owner, it is responsible for leasing of dwellings at Overlook at Golden Hills in a manner that complies with the FHAA.  As a current owner, it is also a necessary party for the relief sought by Plaintiffs.

22.    Defendant Morgan Crescent at Wolfchase Apartments LLC is a limited liability company organized under the laws of Delaware with its principal place of business at 1170

Pittsford Victor Road, Suite 100, Pittsford, New York 14534.   It became the owner of Crescent at Wolfchase in Memphis, Tennessee on or about August 16, 2007.  As the owner, it is responsible for leasing of dwellings at Crescent at Wolfchase in a manner that complies with the FHAA.  As a current owner, it is also a necessary party for the relief sought by Plaintiffs.

        **D.**      **Remedial Defendants**

      23.      Defendant Retreat Apartments of Mobile LLC, also formerly doing business as Echelon Apartments LLC, is a limited liability company organized under the laws of Indiana with its principal place of business at 6010 W. 62nd Street, Indianapolis, Indiana 46278.  It is the current owner of the Retreat at Schillinger Apartments, 1313 Schillinger Road South, Mobile, Alabama 36695; and, in this capacity, it is a necessary party for the relief sought by Plaintiffs. Steven C. Bodner is the managing member of Defendant Retreat Apartments of Mobile LLC; and, on information and belief, he is also an owner of this Defendant.

      24.      Defendant Huntsville Main Street Apartments LLC is a limited liability company organized under the laws of Delaware with its principal place of business at 1170 Pittsford Victor Road, Suite 100, Pittsford, New York 14534.  It is the current owner of the Main Street Apartments, 1450 Paramount Drive, Huntsville, Alabama 35806; and, in this capacity, it is a necessary party for the relief sought by Plaintiffs.

      25.      Defendant Mountain Ranch Apartments LLC is a limited liability company organized under the laws of Indiana with its principal place of business at 6010 W. 62nd Street, Indianapolis, Indiana 46278.  It is the current owner of the Mountain Ranch Apartments, 549 Coral Canyon Loop, Fayetteville, Arkansas 72704; and, in this capacity, it is a necessary party for the relief sought by Plaintiffs.  Steven C. Bodner is the managing member of Defendant

Mountain Ranch Apartments LLC; and, on information and belief, he is also an owner of this Defendant.

26.     Defendant Spring Lake Apartments Limited Partnership is a limited partnership organized under the laws of Illinois and registered to do business in Indiana, with its principal place of business at 3330 Dundee Road, Suite S-3, Northbrook, Illinois 60062.  It is the current owner of the Spring Lake Apartments, 424 Spring Lake Boulevard, Granger, Indiana 46530; and, in this capacity, it is a necessary party for the relief sought by Plaintiffs.

27.     Defendant Reserve Apartments, LLC, also formerly doing business as SCB Townhomes of Evansville, LLC, is a limited liability company organized under the laws of Indiana with its principal place of business at 6010 W. 62nd Street, Indianapolis, Indiana 46278. It is the current owner of the Reserve Townhomes and Apartments, 700 Reserve Boulevard, Evansville, Indiana 47715; and, in this capacity, it is a necessary party for the relief sought by Plaintiffs.  Steven C. Bodner is the organizer of SCB Townhomes of Evansville, LLC; and, on information and belief, he is also a member and owner of Defendant Reserve Apartments, LLC.

28.     Defendant Cross Lake Apartments, LLC is a limited liability company organized under the laws of Indiana with its principal place of business at 1065 Executive Parkway, Suite 210, Saint Louis, Missouri 63141.  It is the current owner of the Cross Lake Apartments at 7900 Circle Front Court, Evansville, Indiana 47715; and, in this capacity, it is a necessary party for the relief sought by Plaintiffs.

29.     Defendant Twin Creek Apartments LLC is a limited liability company organized under the laws of Indiana with its principal place of business at 6010 W. 62nd Street, Indianapolis, Indiana 46278.  It is the current owner of the Pavilion at Twin Creek at 4007 Raynor Parkway, Bellevue, Nebraska 68123; and, in this capacity, is a necessary party for the

relief sought by Plaintiffs.  Steven C. Bodner is the managing member of Defendant Twin Creek Apartments LLC; and, on information and belief, he is also an owner of this Defendant.

30.    Defendant Whispering Ridge Apartments LLC is a limited liability company organized under the laws of Indiana with its principal place of business at 6010 W. 62nd Street, Indianapolis, Indiana 46278.  It is the current owner of Whispering Ridge Apartments at 17551 Pinkney Plaza, Omaha, Nebraska 68116 and, in this capacity, is a necessary party for the relief sought by Plaintiffs. Steven C. Bodner is the managing member of Defendant Whispering Ridge Apartments LLC; and, on information and belief, he is also an owner of this Defendant.

31.    Defendant Mountaineer Place Apartments, LLC is a limited liability company organized under the laws of Indiana with its principal place of business at 6010 W. 62nd Street, Indianapolis, Indiana 46278.  It is the current owner of Mountaineer Place Apartments at 251 Stewart Street, Morgantown, WV 26505; and, in this capacity, is a necessary party for the relief sought by Plaintiffs.  Steven C. Bodner is the managing member of Defendant Mountaineer Place Apartments, LLC; and, on information and belief, he is also an owner of this Defendant.

32.    Defendant Village at Quail Springs Apartments, LLC is a limited liability company organized under the laws of Indiana with its principal place of business at 6010 W. 62nd Street, Indianapolis, Indiana 46278.  It is the current owner of Village at Quail Springs at 14520 North Pennsylvania Avenue, Oklahoma City, Oklahoma 73134; and, in this capacity, is a necessary party for relief sought by Plaintiffs.  Steven C. Bodner is the managing member of Defendant Village at Quail Springs Apartments, LLC; and, on information and belief, he is also an owner of this Defendant.

## IV.    STATUTORY AND REGULATORY FRAMEWORK

33.    Congress enacted the FHAA design and construction accessibility requirements as part of a comprehensive revision of the Fair Housing Act to prohibit discrimination on the basis of disability.[1] The debates and legislative history of the Fair Housing Amendments Act of 1988 reflect Congressional findings that a person using a wheelchair or other mobility aid is just as effectively excluded from the opportunity to live in a particular dwelling by steps or thresholds at building or unit entrances and by too narrow doorways as by a posted sign saying "No Handicapped People Allowed."  In considering the 1988 disability amendments to the FHAA, Congress stressed that enforcement of civil rights laws is necessary to protect people with disabilities from the "devastating" impact of housing discrimination, including the "architectural barriers" erected by developers and builders who fail to construct dwellings and public use areas accessible to and adaptable by people with disabilities.  H.R. REP. NO. 100-711, at 25 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2186.

34.    In response to Congressional findings, the FHAA mandates that multi-family apartment buildings containing four (4) or more units, and built for first occupancy after March 13, 1991 ("covered multifamily dwellings"), be subject to certain design and construction requirements.  All ground floor units must provide:

    a.   public-use and common-use areas that are readily accessible to, and usable by, people with disabilities;

---

[1]  The FHAA uses the term "handicap" instead of the term "disability." Both terms have the same legal meaning. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998) (noting that definition of "disability" in the Americans with Disabilities Act is drawn almost verbatim "from the definition of 'handicap' contained in the Fair Housing Amendments Act of 1988").  Except when referring to the statutory language of the FHAA, this Complaint uses the term "disability," which is more generally accepted.

b.   all doors into and within covered units that are sufficiently wide to allow

passage by people in wheelchairs;

c.   an accessible route into and through the dwelling;

d.   light switches, electrical outlets, thermostats and other environmental controls

in accessible locations;

e.   reinforcements in bathroom walls that allow for the later installation of grab

bars; and

f.   usable kitchens and bathrooms such that an individual in a wheelchair can

maneuver about the space.

35.     Pursuant to Congressional authority, the United States Department of Housing

and Urban Development ("HUD") promulgated final FHAA design and construction regulations

in January 1989, *see* 24 C.F.R. § 100.205, and published the final Fair Housing Accessibility

Guidelines on March 6, 1991, s*ee* 56 Fed. Reg. 9472, and the *Fair Housing Act Design Manual*

in August 1996, which was revised in August 1998.

36.     The FHAA also prohibits discrimination in the rental of a dwelling or to

otherwise make unavailable or deny a dwelling to an individual because of disability, 42 U.S.C.

§ 3604(f)(1), or to discriminate in the terms, conditions, or privileges of a rental, or in the

provision of services or facilities in connection with the rental of a dwelling, because of

disability.  42 U.S.C. § 3604(f)(2).


## V.   FACTUAL AND LEGAL BACKGROUND

37.     Plaintiffs became aware in 2008 that new multifamily housing complexes

designed and/or constructed by the Design/Build Defendants did not include the required

elements of accessible and adaptable design.  Plaintiffs subsequently visited Village at Rice

Hope in Port Wentworth, Georgia; Pavilion at Plantation Way in Macon, Georgia; Summer Place

Apartments in Granger, Indiana; Brooklyn Place Apartments in Evansville, Indiana; The

Overlook at Golden Hills in Lexington, South Carolina; and Crescent at Wolfchase in Memphis,

Tennessee (hereinafter the "Tested Properties"), and identified multiple FHAA design and

construction violations.

> A.     **The Design/Build Defendants' Violations of 42 U.S.C § 3604(f)(1)-(f)(2) and (f)(3)(C) at the Tested Properties**

38.     The frequency and similarity of violations at covered units and common use

areas, which were identified in the investigations by Plaintiffs at the Tested Properties,

demonstrate that the Design/Build Defendants have engaged in a pervasive pattern or practice of

designing and constructing apartments in violation of the FHAA's accessibility requirements.

39.     The Design/Build Defendants' violations of 42 U.S.C. § 3604(f)(3)(C) at the

Tested Properties include, but are not limited to, those outlined in paragraphs 40 through 47

below.  These allegations represent just some of the evidence of a continuing pattern and practice

of failure to design and construct covered units and public and common use areas in compliance

with 42 U.S.C. § 3604(f)(3)(C), and are not intended as an exhaustive inventory of such

violations.

40.     The Bodner Defendants at Summer Place, Brooklyn Place and, with Defendant

Rice Hope, at Village at Rice Hope have failed to design and/or construct covered, multifamily

dwellings with an accessible entrance on an accessible route, in compliance with 24 C.F.R. §

100.205(a) and 42 U.S.C. § 3604(f)(3)(C)(iii)(I).  For example, on accessible routes to covered

units, there are:  excessively high and abrupt level changes caused by steps; a sidewalk with a

running slope in excess of 5% and without ramp features; automobile parking spaces at the base

of curb cuts that block the accessible route when a vehicle is parked in the space; and parking spaces without wheel stops located adjacent and perpendicular to sidewalks such that when a vehicle is parked in the space the overhang of the vehicle will reduce the width of the accessible route to less than 36 inches wide.

41.     The Bodner Defendants at Overlook at Golden Hills, Brooklyn Place and, with Defendant Rice Hope, at Village of Rice Hope and, with Defendant Pavilion, at Pavilion at Plantation Way have failed to design and/or construct public and common use areas that are readily accessible to and usable by people with disabilities in compliance with 24 C.F.R. § 100.205(c)(1) and 42 U.S.C. § 3604(f)(3)(C)(i) by failing to provide an accessible route within the boundary of the site to public and common use areas.  For example, on the route to the leasing office, a curb ramp is built in the sidewalk that is perpendicular to the line of travel and without a 48 inches x 48 inches level landing at the top of the curb ramp such that people with mobility impairments, traveling on the sidewalk to or from the leasing office, must travel across a curb ramp with an excessive cross slope; there is a curb cut with a running slope in excess of 8.33% on the route to the mail boxes; there is a gate to the pool with a latch beyond the reach range of people in wheelchairs; the operative parts of mail boxes and the outgoing mail slot is beyond the reach range of a wheelchair user; and there are thresholds to the computer rooms which are excessively high and without a bevel for passage by a wheelchair user.

42.     The Bodner Defendants at Crescent at Wolfchase, Brooklyn Place and, with Defendant Pavilion, at Pavilion at Plantation Way have failed to design and/or construct public and common use areas that are readily accessible to and usable by people with disabilities, in compliance with 24 C.F.R. § 100.205(c)(1) and 42 U.S.C. § 3604(f)(3)(C)(i), by failing to provide "handicap accessible" parking.  For example, there is "handicap accessible" parking

without an access aisle or with an access aisle that is excessively sloped for a wheelchair user to safely transfer from a vehicle to a wheelchair, and "handicap accessible" parking without compliant signs which designate the parking for persons with disabilities.

43.     The Bodner Defendants at Overlook at Golden Hills, Crescent at Wolfchase, Summer Place, Brooklyn Place and, with Defendant Pavilion, at Pavilion at Plantation Way have failed to design and/or construct public and common use areas that are readily accessible and usable by people with disabilities in compliance with 24 C.F.R. § 100.205(c)(1) and 42 U.S.C. § 3604(f)(3)(C)(i), by failing to provide accessible toilet rooms and bathing facilities.  For example, there are roll-under lavatories in common use bathrooms with hot water pipes and drain pipes that are not insulated or otherwise protected for people in wheelchairs; lavatories with insufficient clear floor space for a forward or side approach by a wheelchair user; shower stalls that are insufficiently sized for use by people with mobility impairments; wall hung urinals located excessively high for use by people in wheelchairs; paper towel dispensers located beyond the reach range of people in wheelchairs; toilet stalls that are insufficiently wide or deep for people in wheelchairs; and, toilets without grab bars or improperly located grab bars for people with mobility impairments.

44.     The Bodner Defendants at Overlook at Golden Hills, Crescent at Wolfchase, Brooklyn Place and, with Defendant Rice Hope, at Village of Rice Hope have failed to design and/or construct accessible routes into and through all premises within covered dwellings in compliance with 24 C.F.R. 100.205(c)(3)(i) and 42 U.S.C. § 3604(f) (3)(C)(iii)(I).  For example, there are covered units with primary entry doors with excessively high and abrupt level changes at the exterior side of the threshold; doors to the patio or balcony with excessively high and abrupt level changes at the interior side of the threshold; and, transitions from hardwood floors to

18

carpeted floors with excessively high and abrupt level changes for passage by people with mobility impairments.

45.     The Bodner Defendants at Overlook at Golden Hills, Summer Place, Brooklyn Place and, with Defendant Rice Hope, at Village of Rice Hope and, with Defendant Pavilion, at Pavilion at Plantation Way have failed to design and/or construct environmental controls and outlets in accessible locations in covered units in compliance with 24 C.F.R. §100.205(c)(3)(ii) and 42 U.S.C. § 3604(f)(3)(C)(iii)(II).

46.     The Bodner Defendants at Overlook at Golden Hills, Crescent at Wolfchase, Brooklyn Place and, with Defendant Rice Hope, at Village of Rice Hope and, with Defendant Pavilion, at Pavilion at Plantation Way have failed to design and/or construct usable bathrooms such that an individual in a wheelchair can maneuver about the space in compliance with 24 C.F.R. § 100.205(c)(3)(iv) and 42 U.S.C. § 3604(f)(3)(C)(iii)(IV).  For example, there are covered bathrooms with:  insufficient centered, clear floor space at the lavatory for a parallel or forward approach by a wheelchair user; insufficient clear floor space adjacent to the tub, so that a wheelchair user may safely transfer to the tub; insufficient space between the centerline of the toilet and the adjoining wall for the installation and use of grab bars for people with mobility impairments and for wheelchair users to transfer from their wheelchair to the toilet.

47.     The Bodner Defendants at Crescent at Wolfchase, Summer Place, Brooklyn Place and, with Defendant Rice Hope, at Village of Rice Hope and, with Defendant Pavilion, at Plantation Way have failed to design and/or construct usable kitchens such that an individual in a wheelchair can maneuver about the space in compliance with 24 C.F.R. § 100.205(c)(3)(iv) and 42 U.S.C. § 3604(f)(3)(C)(iii)(IV).  For example, there are covered kitchens with:  insufficient centered, clear floor space at the dishwasher for a forward or parallel approach by a wheelchair

user; insufficient workspace between opposing elements, such as between the refrigerator and the sink, for a wheelchair user; and insufficient centered, clear floor space at the sink for a parallel approach by a wheelchair user.

48.     Further, by failing to provide the accessible and adaptable features required by 42 U.S.C. § 3604(f)(3)(C) at the Tested Properties for people with physical disabilities, including but not limited to those outlined in paragraphs 40 through 47 above, the Design/Build Defendants have made dwellings unavailable to people with physical disabilities in violation of 42 U.S.C. § 3604(f)(1) and/or have discriminated against them in the terms, conditions or privileges of the rental of dwellings in violation of 42 U.S.C. § 3604(f)(2).

**B.      The Owner Defendants' Violations of 42 U.S.C. § 3604(f)(1)-(f)(2) at the Tested Properties**

49.     Each of the Tested Properties have features that do not comply with 42 U.S.C. § 3604(f)(3)(C), including but not limited to those described in paragraphs 50 through 55 below. These are not intended as an exhaustive inventory of such deficits, however.  Each Owner Defendant either has knowledge of these deficits or has had sufficient time to discover and correct them and has not done so.  Rather, the Owner Defendants have continued to rent covered units with common use areas with features that are inaccessible to people with physical disabilities.

50.     Village at Rice Hope does not have:

a.      covered dwellings with accessible entrances on accessible routes in compliance with 24 C.F.R. § 100.205(a) and 42 U.S.C. § 3604(f)(3)(C)(iii)(I) due to excessively high and abrupt level changes caused by steps and a running slope in excess of 5% and without ramp features;

20

      b.    public and common use areas that are readily accessible and usable by people with disabilities in compliance with 24 C.F.R. § 100.205(c)(1) and 42 U.S.C. § 3604(f)(3)(C)(i) due to thresholds to the computer rooms which are excessively high and without a bevel for passage by a wheelchair user;

      c.    accessible routes into and through all premises within covered dwellings in compliance with 24 C.F.R. § 100.205(c)(3)(i) and 42 U.S.C. § 3604(f)(3)(C)(iii)(I) due to excessively high and abrupt level changes at the interior side of the threshold of doors to the patio and balcony;

      d.    environmental controls in accessible locations in covered units in compliance with 24 C.F.R. § 100.205(c)(3)(ii) and 42 U.S.C. § 3604(f)(3)(C)(iii)(II);

      e.    covered dwellings with usable bathrooms such that an individual in a wheelchair can maneuver about the space in compliance with 24 C.F.R. § 100.205(c)(3)(iv) and 42 U.S.C. § 3604(f)(3)(C)(iii)(IV) due to insufficient centered, clear floor space at the lavatory for a parallel or forward approach by a wheelchair user; and

      f.    covered dwellings with usable kitchens such that an individual in a wheelchair can maneuver about the space in compliance with 24 C.F.R. § 100.205(c)(3)(iv) and 42 U.S.C. § 3604(f)(3)(C)(iii)(IV) due to insufficient centered, clear floor space at the dishwasher for a forward or parallel approach by a wheelchair user.

By continuing to rent covered dwelling units without correcting these features, Defendant Rice Hope has made dwellings unavailable to and discriminated in the provision of services and facilities against people with disabilities in violation of 42 U.S.C. § 3604(f)(1)-(2).

51.     Pavilion at Plantation Way does not have:

a.     public and common use areas that are readily accessible and usable by people with disabilities in compliance with 24 C.F.R. § 100.205(c)(1) and 42 U.S.C. § 3604(f)(3)(C)(i) due to:  the location of the operative parts of mailboxes and the outgoing mail slot beyond the reach range of persons in wheelchairs; "handicap accessible" parking at the mail boxes without compliant signs which designate the parking for persons with disabilities; excessive slope on the curb to the mail boxes; public and common use toilet rooms with roll-under lavatories with hot water pipes and drains pipes that are not insulated or otherwise protected for people in wheelchairs; wall hung urinals located excessively high for use by persons with mobility impairments; and, toilet stalls that are insufficiently wide or deep for use by people in wheelchairs;

b.     environmental controls in accessible locations in covered units in compliance with 24 C.F.R. § 100.205(c)(3)(ii) and 42 U.S.C. § 3604(f)(3)(C)(iii)(II);

c.      usable bathrooms in covered units such that an individual in a wheelchair can maneuver about the space in compliance with 24 C.F.R. § 100.205(c)(3)(iv) and 42 U.S.C. § 3604(f)(3)(C)(iii)(IV) due to insufficient centered, clear floor space at the lavatory for a parallel or forward approach by a wheelchair user; and,

d.     covered dwellings with usable kitchens such that an individual in a wheelchair can maneuver about the space in compliance with 24 C.F.R. § 100.205(c)(3)(iv) and 42 U.S.C. § 3604(f)(3)(C)(iii)(IV) due to insufficient centered, clear floor space at the dishwasher for a forward or parallel approach by a wheelchair user.

By continuing to rent covered dwelling units without correcting these features, Defendant

Pavilion has made dwellings unavailable to and discriminated in the provision of services and

facilities against people with disabilities in violation of 42 U.S.C. § 3604(f)(1)-(2).

52.     Summer Place does not have:

a.      accessible entrances on accessible routes to covered units in compliance

with 24 C.F.R. § 100.205(a) and 42 U.S.C. § 3604(f)(3)(C)(iii)(I) due to a sidewalk with

a running slope in excess of 5% and without ramp features;

b.      public and common use toilet rooms and bathing facilities that are readily

accessible and usable for people with disabilities in compliance with 24 C.F.R. §

100.205(c)(1) and 42 U.S.C. § 3604(f)(3)(C)(i) due to roll-under lavatories with hot water

pipes and drain pipes that are not insulated or otherwise protected for people in

wheelchairs; shower stalls that are insufficiently sized for use by persons with mobility

impairments and toilets with improperly located grab bars for persons with mobility

impairments;

c.      environmental controls in accessible locations in covered units in

compliance with 24 C.F.R. § 100.205(c)(3)(ii) and 42 U.S.C. § 3604(f)(3)(C)(iii)(II); and,

d.      usable kitchens in covered units such that an individual in a wheelchair

can maneuver about the space in compliance with 24 C.F.R. § 100.205(c)(3)(iv) and 42

U.S.C. § 3604(f)(3)(C)(iii)(IV) due to insufficient workspace between opposing

elements, such as between the refrigerator and the sink, for a wheelchair user.

By continuing to rent covered dwelling units without correcting these features, Defendant LBM

Realty, LLC has made dwellings unavailable to and discriminated in the provision of services

and facilities against people with disabilities in violation of 42 U.S.C. § 3604(f)(1)-(2).

53.     Brooklyn Place does not have:

a.      covered dwellings with accessible entrances on accessible routes in compliance with 24 C.F.R. § 100.205(a) and 42 U.S.C. § 3604(f)(3)(C)(iii)(I) due to: automobile parking spaces at the base of curb cuts that block the accessible route when a vehicle is parked in the space and parking spaces without wheel stops located adjacent and perpendicular to sidewalks such that when a vehicle is parked in the space the overhang will reduce the width of the accessible route to less than 36 inches wide;

b.      public and common use areas that are readily accessible and usable for people with disabilities in compliance with 24 C.F.R. § 100.205(c)(1) and 42 U.S.C. § 3604(f)(3)(C)(i) due to:  a gate to the pool with a latch which is beyond the reach range of a person in a wheelchair; "handicap accessible" parking without an access aisle; paper towel dispensers located beyond the reach range of persons in wheelchairs; and, toilet stalls that are insufficiently deep for use by persons in wheelchairs;

c.      accessible routes into and through all premises within covered dwellings in compliance with 24 C.F.R. § 100.205(c)(3)(i) and 42 U.S.C. § 3604(f)(3)(C)(iii)(I) due to excessively high and abrupt level changes for passage by persons with mobility impairments at the transitions from hardwood floors to carpeted floors; and at the interior side of balconies.

d.      covered units with environmental controls and outlets in accessible locations in compliance with 24 C.F.R. § 100.205(c)(3)(ii) and 42 U.S.C. § 3604(f)(3)(C)(iii)(II);

e.      usable bathrooms in covered units such that an individual in a wheelchair can maneuver about the space in compliance with 24 C.F.R. § 100.205(c)(3)(iv) and 42

24

U.S.C. § 3604(f)(3)(C)(iii)(IV) due to insufficient centered, clear floor space at the

lavatory for a parallel or forward approach by a wheelchair user; and,

      f.     usable kitchens in covered units such that an individual in a wheelchair

can maneuver about the space in compliance with 24 C.F.R. § 100.205(c)(3)(iv) and 42

U.S.C. § 3604(f)(3)(C)(iii)(IV) due to:  insufficient centered, clear floor space at the

dishwasher for a forward or parallel approach by a wheelchair user; and insufficient

centered, clear floor space at the sink for a parallel approach by a wheelchair user.

By continuing to rent covered dwelling units without correcting these features, Defendants

Brooklyn Place TIC I, LLC through Brooklyn Place TIC XXIX, LLC have made dwellings

unavailable to and discriminated in the provision of services and facilities against people with

disabilities in violation of 42 U.S.C. § 3604(f)(1)-(2).

     54.    Overlook at Golden Hills does not have:

      a.     public and common use areas that are readily accessible and usable for

people with disabilities in compliance with 24 C.F.R. § 100.205(c)(1) and 42 U.S.C. §

3604(f)(3)(C)(i) due to:  a curb ramp that is built in the sidewalk perpendicular to the line

of travel and without a 48 inches x 48 inches level landing at the top of the curb ramp

such that persons with mobility impairments traveling on the sidewalk to or from the

leasing office must travel across a curb ramp with an excessive cross slope; roll-under

lavatories in common use bathrooms with hot water pipes and drains pipes that are not

insulated or otherwise protected; shower stalls that are insufficiently sized for use by

persons with mobility impairments; and, toilets without grab bars for persons with

mobility impairments;

       b.     accessible routes into and through all premises within covered dwellings in compliance with 24 C.F.R. § 100.205(c)(3)(i) and 42 U.S.C. § 3604(f)(3)(C)(iii)(I) due to:  primary entry doors with excessively high and abrupt level changes at the exterior side of the threshold; and environmental controls in accessible locations in covered units in compliance with 24 C.F.R. § 100.205(c)(3)(ii) and 42 U.S.C. § 3604(f)(3)(C)(iii)(II); and,

       c.     usable bathrooms in covered units such that an individual in a wheelchair can maneuver about the space in compliance with 24 C.F.R. § 100.205(c)(3)(iv) and 42 U.S.C. § 3604(f)(3)(C)(iii)(IV) due to:  insufficient centered, clear floor space at the lavatory for a parallel or forward approach by a wheelchair user; insufficient space between the centerline of the toilet and the adjoining wall for the installation and use of grab bars for people with mobility impairments and for wheelchair users to transfer from their wheelchair to the toilet.

By continuing to rent covered dwelling units without correcting these features, Defendant Morgan Overlook Apartments LLC has made dwellings unavailable to and discriminated in the provision of services and facilities against people with disabilities in violation of 42 U.S.C. § 3604(f)(1)-(2).

     55.     Crescent at Wolfchase does not have:

       a.     public and common use areas that are readily accessible and usable for people with disabilities in compliance with 24 C.F.R. § 100.205(c)(1) and 42 U.S.C. § 3604(f)(3)(C)(i) due to:  roll-under lavatories with hot water and drain pipes that are not insulated or otherwise protected for people in wheelchairs; shower stalls that are insufficiently sized for use by persons with mobility impairments; wall hung urinals

located excessively high for use by persons with mobility impairments; and, paper towel dispensers located beyond the reach range of persons in wheelchairs;

      b.      accessible routes into and through all premises within covered dwellings in compliance with 24 C.F.R. § 100.205(c)(3)(i) and 42 U.S.C. § 3604(f)(3)(C)(iii)(I) due covered units with primary entry doors with excessively high and abrupt level changes at the exterior side of the threshold; and excessively high and abrupt level changes at the threshold to the balcony;

      c.      usable bathrooms in covered units such that an individual in a wheelchair can maneuver about the space in compliance with 24 C.F.R. § 100.205(c)(3)(iv) and 42 U.S.C. § 3604(f)(3)(C)(iii)(IV) due to insufficient centered, clear floor space at the lavatory for a parallel or forward approach by a wheelchair user; and,

      d.      usable kitchens in covered units such that an individual in a wheelchair can maneuver about the space in compliance with 24 C.F.R. §100.205(c)(3)(iv) and 42 U.S.C. § 3604(f)(3)(C)(iii)(IV) due to insufficient centered, clear floor space at the dishwasher for a forward or parallel approach by a wheelchair user.

By continuing to rent covered dwelling units without correcting these features, Defendant Morgan Crescent at Wolfchase Apartments LLC has made dwellings unavailable to and discriminated in the provision of services and facilities against people with disabilities in violation of 42 U.S.C. § 3604(f)(1)-(2).

## VI.   INJURY TO PLAINTIFFS

56.      As a result of the Design/Build and the Owner Defendants' actions described above, each of the Plaintiffs has been directly and substantially injured and frustrated in its

mission to eradicate discrimination in housing, and in its efforts to carry out the programs and services that it provides, including encouraging integrated living patterns, educating the public about fair housing rights and requirements, educating and working with industry groups and others on fair housing compliance, and providing counseling services to persons either looking for housing or affected by discriminatory housing practices. Each of the Plaintiffs has also been damaged by having to divert scarce resources that could have been used to provide these services to instead identify and counteract the Design/Build and Owner Defendants' discriminatory conduct.

57. In addition, Plaintiffs have invested considerable time and effort in education about the importance of accessible housing for people with disabilities, in an attempt to secure compliance by entities involved in the design, construction, and rental of covered multi-family dwellings. Each time the Design/Build Defendants designed and constructed covered dwellings that did not comply with the FHAA and the Owner Defendants rented or offered to rent covered dwelling units without correcting these features, they frustrated the mission of the Plaintiffs inasmuch as they served to discourage people with disabilities from living at that dwelling, and encouraged other entities involved in the design, construction, and rental of covered units to disregard their own responsibilities under the FHAA. The Design/Build and Owner Defendants' conduct reduced the effectiveness of Plaintiffs' outreach efforts and caused the Plaintiffs to provide additional educational programs to rebut the impression that constructing inaccessible residential housing is permissible.

58. The Design/Build and the Owner Defendants' continuing discriminatory practices have forced the Plaintiffs to divert scarce resources to identify, investigate and counteract the

Defendants' discriminatory practices, and such practices have frustrated Plaintiffs' other efforts against discrimination, causing Plaintiffs to suffer concrete and demonstrable injuries.

59.     Plaintiffs have conducted tests at Village of Rice Hope, Pavilion at Plantation Way, Summer Place Apartments, Brooklyn Place Apartments, Overlook at Golden Hills and Crescent at Wolfchase resulting in the diversion of their resources that they would not have had to expend were it not for the Design/Build and the Owner Defendants' violations.

60.     Until remedied, the Design/Build and the Owner Defendants will continue to injure Plaintiffs by *inter alia*:

       a.     interfering with efforts and programs intended to bring about equality of opportunity in housing, including ensuring that multifamily developments are accessible to people with disabilities;

       b.     requiring the commitment of scarce resources, including substantial staff time to identify and investigate the discriminatory conduct of the Design/Build Defendants and counteract their discriminatory conduct, thus diverting those resources from other services; and,

       c.     frustrating their missions and purposes of promoting equal availability of housing to all persons without regard to any protected category, including disability.

61.     The Design/Build and the Owner Defendants' discriminatory conduct will also deprive individuals to whom Plaintiffs provide services and others living in and near the Tested Properties of the benefit of living in a diverse community that includes persons who have disabilities and use wheelchairs.

## VII.  LEGAL CLAIMS

62.     Plaintiffs adopt and re-allege the allegations of Paragraphs 1 through 61 of this Complaint.

63.     Each of the properties specified in Appendix A contains residential apartment units that are "dwellings" within the meaning of 42 U.S.C. § 3602(b).


### FIRST CAUSE OF ACTION
Violations of the Fair Housing Act, 42 U.S.C. § 3604(f)(1)-(f)(2) and (f)(3)(C)
by the Design/Build Defendants

64.     At the properties specified in Appendix A, each ground-floor unit in non-elevator buildings and each unit on floors served by an elevator are "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604(f)(7)(A), was built for first occupancy after March 13, 1991, and is subject to the design and construction requirements set forth in 42 U.S.C. § 3604(f)(3)(C) of the FHAA.  The public and common use areas of the properties specified in Appendix A are also subject to the design and construction requirements of 42 U.S.C. § 3604(f)(3)(C).

65.     The Design/Build Defendants, together and separately, have failed to design and construct the Tested Properties so that:

a.      the public use and common use portions are readily accessible to and usable by persons with disabilities; and

b.      all the ground floor units contain the following features of accessible and adaptive design:

i.      an accessible route into and through the dwelling;

30

        ii.     light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; and

        iii.    usable kitchens and bathrooms such that a person in a wheelchair can maneuver about the space.

66.    Through the actions and inactions described above, the Design/Build Defendants, together and separately, have:

        a.     discriminated in the rental of, or otherwise made unavailable, or denied dwellings to persons because of their disabilities in violation of 42 U.S.C. § 3604(f)(1);

        b.     discriminated against persons because of their disabilities in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with the rental of a dwelling, in violation of 42 U.S.C. § 3604(f)(2);

        c.     failed to design and construct dwellings in compliance with the requirements mandated by  42 U.S.C. § 3604(f)(3)(C) and the applicable regulations, 24 C.F.R. Part 100.205.

## SECOND CAUSE OF ACTION
### Violations of the Fair Housing Act, 42 U.S.C. § 3604(f)(1)-(f)(2)
### by the Owner Defendants

67.    The Owner Defendants, either with knowledge or with sufficient time to discover and correct these deficits, have continued to rent covered units at their properties such that:

        a.     the public use and common use portions are not readily accessible to and usable by persons with disabilities; and,

b.      the ground floor units do not contain the following features of adaptive design:

   i.      an accessible route into and through the dwelling;

   ii.      light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; and,

   iii.      usable kitchens and bathrooms such that a person in a wheelchair can maneuver about the space.

68.      Through the actions and inactions described in paragraph 67 above, the Owner Defendants have:

a.      discriminated in the rental of, or otherwise made unavailable, or denied dwellings to people because of their disabilities in violation of the FHAA, 42 U.S.C. § 3604(f)(1); and

b.      discriminated against people with disabilities in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with the rental of a dwelling in violation of the FHAA, 42 U.S.C. § 3604(f)(2).

69.      The Design/Build and the Owner Defendants' conduct described herein has been intentional, willful, and with callous disregard for the rights of people with disabilities.

70.      As a result of the Design/Build and the Owner Defendants' wrongful conduct, Plaintiffs and all persons who utilize the services of these organizations have been injured by a discriminatory housing practice and are, therefore, "aggrieved person[s]" as defined by 42 U.S.C. § 3602(i), and as used in 42 U.S.C. § 3613(a)(1)(A).

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court enter an Order against

Defendants, together and individually, as follows:

A.    Declaring:

1.    the conduct of the Design/Build Defendants in designing and constructing

the Tested Properties, as alleged herein, is in violation of the FHAA, 42 U.S.C. §

3604(f)(1)-(f)(2) and (f)(3)(C); and,

2.    the conduct of the Owner Defendants in continuing to rent covered units

which do not comply with the FHAA, 42 U.S.C. § 3604(f)(3)(C) is in violation of FHAA,

42 U.S.C. § 3604(f)(1)-(f)(2).

B.    Enjoining:

1.    the Design/Build and Owner Defendants, their officers, directors,

employees, agents, successors, assigns, and all other persons in active concert or

participation with any of them from failing or refusing to bring the covered dwelling units

and the public use and common use areas at each of the Tested Properties into immediate

compliance with the requirements of 42 U.S.C. § 3604(f)(3)(C) and the applicable

regulations; to comply with such procedures for inspection and certification of the

retrofits performed as may be ordered by this Court; and to perform or allow such other

acts as may be necessary to effectuate any judgment of this Court against them.

2.    the Owner Defendants, their officers, directors, employees, agents,

successors, assigns, and all other persons in active concert or participation with any of

them, from renting covered dwelling units in their respective Tested Property until all

such units and the public and common use areas of their Tested Property have been

brought into immediate compliance with the requirements of 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations.

     C.     Permanently enjoining the Design/Build Defendants from failing or refusing to design and construct any covered multifamily dwellings in the future in compliance with the FHAA and applicable regulations.

     D.     Ordering the Bodner Defendants to:

     1.     survey each and every apartment community containing "covered units" and appurtenant common and public use areas at any covered property for which any of them had a role in the design and construction since March 13, 1991, other than the Tested Properties ("Remaining Portfolio") and assess the compliance of each with the accessibility requirements of the FHAA;

     2.     report to the Court the extent of the noncompliance of the Remaining Portfolio with the accessibility requirements of the FHAA; and,

     3.     bring each and every such apartment community in the Remaining Portfolio into compliance with the requirements of 42 U.S.C. § 3604(f)(3)(C), and the applicable regulations.

     E.     Enjoining the Remedial Defendants and the owner of any other covered apartment community in the Remaining Portfolio not presently known to Plaintiffs from failing or refusing to permit the survey of any of their covered properties that were designed and/or built by the Bodner Defendants and any retrofits ordered by the Court to be made at such property, to also comply with such procedures for inspection and certification of the retrofits performed as may be ordered by this Court, and to perform or allow such other acts as may be necessary to effectuate any judgment against the Design/Build Defendants.

F.      Award such compensatory damages as would fully compensate Plaintiffs for the

injuries incurred as a result of the discriminatory housing conduct of the Design/Build and

Owner Defendants;

G.      Award such punitive damages against the Design/Build and Owner Defendants as

are proper under the law;

H.      Award Plaintiffs their costs, attorney's fees, and expenses; and

I.      Award such other relief as this Court deems just and proper.


## IX.    JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  May 6, 2011                          Respectfully submitted,


                                              /s/ Michael G. Allen
                                             Michael G. Allen*
                                             Stephen M. Dane*
                                             Thomas J. Keary*
                                             RELMAN, DANE & COLFAX, PLLC
                                             1225 19th Street, N.W., Suite 600
                                             Washington, D.C. 20036
                                             Tel: 202-728-1888
                                             Fax: 202-728-0848
                                             mallen@relmanlaw.com
                                             sdane@relmanlaw.com
                                             tkeary@relmanlaw.com
                                             *admitted *pro hac vice*

                                             John Emry (Indiana Bar No. 8360-49)
                                             JOHN EMRY LAW
                                             62 W. Jefferson Street
                                             Franklin, IN 46131
                                             Tel:  317-736-5800
                                             Fax:  317-736-6070
                                             johnemrylaw@att.net

                                             *Attorneys for Plaintiffs*

35

## Appendix A

### Alabama

1. Retreat at Schillinger Apartments
   1313 Schillinger Road South
   Mobile, Alabama 36695

2. Main Street Apartments
   1450 Paramount Drive
   Huntsville, Alabama 35806

### Arkansas

3. Mountain Ranch Apartments
   549 Coral Canyon Loop
   Fayetteville, Arkansas 72704

### Georgia

4. Village at Rice Hope Apartments
   203 Magnolia Boulevard
   Port Wentworth, Georgia 31407

5. Pavilion at Plantation Way
   399 Plantation Way
   Macon, Georgia 31210

### Indiana

6. Summer Place Apartments
   825 Summer Place Lane
   Granger, Indiana 46530

7. Spring Lake Apartments
   424 Spring Lake Boulevard
   Granger, Indiana

8. Brooklyn Place Apartments
   6830 Brooklyn Court
   Evansville, Indiana 47715

9. The Reserve Townhomes and Apartments
   700 Reserve Boulevard
   Evansville, Indiana 47715

10. Cross Lake Apartments
    7900 Circle Front Court
    Evansville, Indiana 47715

**Nebraska**

11. Pavilion at Twin Creek
    4007 Raynor Parkway
    Bellevue, Nebraska 68123

12. Whispering Ridge Apartments
    17551 Pinkney Plaza
    Omaha, Nebraska 68116

**Oklahoma**

13. Village at Quail Springs
    14520 North Pennsylvania Avenue
    Oklahoma City, Oklahoma 73134

**South Carolina**

14. Overlook at Golden Hills
    300 Caughman Farm Lane
    Lexington, South Carolina 29072

**Tennessee**

15. Crescent at Wolfchase
    7819 Crescent Ridge Lane
    Memphis, Tennessee 78133

**West Virginia**

16. Mountaineer Village Apartments
    251 Stewart Street
    Morgantown, WV 26505