UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

National Fair Housing Alliance, Inc., *et al.*,      )
                                                    )
                    Plaintiffs,                     )
                                                    )      Case No. 1:10-CV-0993-RLY-DML
              v.                                    )
                                                    )
S.C. Bodner Company, Inc., *et al.*,                )
                                                    )
                    Defendants.                     )
                                                    )

**PLAINTIFFS' OPPOSITION TO THE MOTIONS TO DISMISS FILED BY
MORGAN DEFENDANTS (DOC. NOS. 110-111); BPTIC DEFENDANTS (DOC. NOS.
103-104); AND DEFENDANT CROSS LAKE (DOC. NOS. 107-108)**

Plaintiffs National Fair Housing Alliance, Inc., Savannah-Chatham County Fair Housing

Council, Inc., and Metro Fair Housing Services, Inc. submit this Opposition to the Motions to

Dismiss the Amended Complaint filed by Defendants Morgan Overlook Apartments LLC,

Morgan Crescent at Wolfchase, LLC, and Huntsville Main Street Apartments LLC ("Morgan

Defendants") (Doc. Nos. 110-111); Defendants Brooklyn Place TIC I, LLC through Brooklyn

Place TIC XXIX, LLC ("BPTIC Defendants") (Doc. Nos. 103-104) (collectively referred to

herein as "Movants"); and Defendant Cross Lake Apartments, LLC ("Cross Lake") (Doc. Nos.

107-108).

Movants' core argument is that the Amended Complaint "fails to identify any disabled

individual who faced . . . alleged discrimination, or any specific instance of . . . allegedly

discriminatory conduct." (Morgan Mem. [Doc. No. 111] at 7; *see also* BPTIC Mem. [Doc. No.

104] at 6.) But to support their claims under the Fair Housing Act the Plaintiffs, who are fair

housing organizations with Article III standing in their own right, are not required to identify

specific victims or instances of discrimination.  The Supreme Court and the Seventh Circuit (as well as other circuits) have repeatedly upheld the standing of fair housing organizations to bring claims like this one, even in the absence of individual complaints or instances of discrimination. Moreover, Plaintiffs allege a policy of discrimination through tester evidence, which does not require the identification of specific individuals or instances of discriminatory conduct.

Movants also contend that no claim for relief can be asserted against them under 42 U.S.C. §3604(f) because they "did not design or construct any of the properties in question." (Morgan Mem. [Doc. No. 111] at 2; *see* BPTIC Mem. [Doc. No. 104] at 2.)  But 42 U.S.C. § 3604(f) does not limit culpability solely to designers and builders of inaccessible multifamily housing.  Rather, the statute is a comprehensive prohibition against *any* behavior – including the knowing or negligent rental of covered dwelling units built for first occupancy after March 13, 1991 – that has the effect of limiting the availability of housing to people with disabilities.  *See Harding v. Orlando Apartments, LLC*, No. 6:11-cv-85-Orl-19DAB, 2011 WL 1457164, at *4-*5 (M.D. Fla. Apr. 15, 2011).

Finally, the Morgan Defendants and Defendant Cross Lake argue that Plaintiffs fail to state a claim against Defendants Huntsville Main Street Apartments, LLC ("Huntsville") and Cross Lake.  (Morgan Mem. [Doc. No. 111] at 9; Cross Lake Mem. [Doc. No. 108] at 1.) However, as set forth below, Plaintiffs seek to join Huntsville and Cross Lake as necessary parties for the purpose of injunctive relief only, as without them the parties cannot realize a full remedy to the ongoing discrimination.

## STANDARD OF REVIEW

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citing *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989)). To survive a motion to dismiss, "[a] plaintiff's complaint need only provide a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007)). The complaint must allege facts, not mere legal conclusions, that "raise a right to relief above the speculative level . . . ." *Twombly,* 550 U.S. at 555; *see also Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (stating that for claims to be "plausible," they must show that a defendant's liability is more than "a sheer possibility"); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403-05 (7th Cir. 2010). In considering a motion to dismiss, the court must "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [plaintiff's] favor." *Tamayo,* 526 F.3d at 1081.

In *Swanson*, the Seventh Circuit reversed in part a district court's dismissal of the plaintiff's claims under the Fair Housing Act. The district court had ruled that the plaintiff's Fair Housing Act allegations were "conclusory and fail[ed] to meet the plausibility requirement" under *Iqbal*. But the Seventh Circuit disagreed, applying the "plausibility standard" to conclude that "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." 614 F.3d at 404 (emphasis in original). The court ruled that because the complaint "identifie[d] the type of discrimination. . . , by whom . . . , and when[,] . . . [t]his is all

that [plaintiff] needed to put in the complaint" to satisfy the requirements of *Iqbal* and *Twombly*. *Id.* at 405.

## FACTUAL BACKGROUND

This civil rights action is brought by the National Fair Housing Alliance, Inc. and two of its members, Savannah-Chatham County Fair Housing Council, Inc. and Metro Fair Housing Services, Inc. ("Plaintiffs"), against the builders, designers, and current owners of multifamily apartment complexes for violations of the accessibility requirements of the Fair Housing Act, as amended by the Fair Housing Amendments Act of 1988 (hereinafter "FHAA"), 42 U.S.C. §§ 3601-3619.  (Am. Compl. [Doc. No. 96] ¶ 1.)[1]

The Amended Complaint sets forth allegations against three categories of Defendants. First, Plaintiffs aver that S.C. Bodner Company, Inc., MBA Construction, LLC,  Steven C. Bodner, and related companies (hereinafter "Design/Build Defendants"), have engaged in a pattern and practice of discrimination against people with disabilities by designing and/or constructing multifamily apartment complexes that fail to provide accessible and adaptable features as required by the FHAA, in violation of 42 U.S.C. § 3604(f)(1), (2), and (3)(C), and 24 C.F.R. § 100.205.  (Am. Compl. ¶ 66.)

Second, Plaintiffs allege that the current owners of multifamily apartment complexes designed and/or constructed by the Design/Build Defendants (hereinafter "Owner Defendants") have engaged in a pattern and practice of discriminating against people with disabilities in the rental of housing, or the terms, conditions, and privileges of housing, in violation of 42 U.S.C. § 3604(f)(1)-(2).  These allegations are based on testing Plaintiffs conducted at six multifamily

---

[1] Parties filed a Joint Motion to Amend Complaint and Add a Party Defendant on May 6, 2011 (Doc. No. 94), which the Court granted on May 10, 2011 (Doc. No. 95).  The Amended Complaint (Doc. No. 96) dismissed Enclave Apartments Covell Village, LLC as a Defendant and added Mountaineer Place Apartments, LLC as a Defendant.

properties – two that are still related to Defendants S.C. Bodner Company, Inc. and Steven C. Bodner[2] and four that are owned by entities unrelated.[3]  The tests revealed multiple violations of the FHAA, which the Amended Complaint describes in detail.  (Am. Compl. ¶¶ 38-55.)  In addition, these parties are named as necessary parties as they are the owners of the tested properties for which injunctive relief, including retrofits, is requested.  (*Id.*, Prayer for Relief, at 33-34.)  Except for Defendants Huntsville Main Street Apartments, LLC and Cross Lake Apartments, LLC (who are Remedial Defendants as described in the next paragraph), the Movants herein are among the class of Owner Defendants.

Third, Plaintiffs include a set of Defendants that are current owners of multifamily apartment complexes designed and/or constructed by the Design/Build Defendants, but whose properties have not been tested by Plaintiffs for violations of the FHAA (hereinafter "Remedial Defendants").[4]  Although these properties have not been tested by Plaintiffs, Plaintiffs allege that these properties share common design features with the tested properties, and thus may have similar FHAA accessibility violations.  (*Id.* ¶ 8.)  While Plaintiffs do not assert a cause of action for damages against the Remedial Defendants, Plaintiffs seek to have these multifamily properties surveyed by the Design/Build Defendants and retrofitted to correct any FHAA violations identified.  (*See id.* ¶ 8, Prayer for Relief, at 34.)  As a result, Remedial Defendants are necessary parties for injunctive purposes only.

---

[2] The Owner Defendants that are related to the Design/Build Defendants are Village at Rice Hope Apartments, LLC, and Pavilion Apartments at Plantation Way, LLC.  Plaintiffs also allege a violation of 42 U.S.C. § 3604(f)(3)(C) against these entities, as they also owned the multifamily properties at the time of design and construction.  (Am. Compl. ¶¶ 17-18, 64-66.)

[3] The Owner Defendants that are unrelated to the Design/Build Defendants are LBM Realty, LLC; Brooklyn Place TIC I, LLC through Brooklyn Place TIC XXIX, LLC; Morgan Overlook Apartments, LLC; and Morgan Crescent at Wolfchase Apartments, LLC.  (Am. Compl. ¶¶ 19-22.)

[4] The Remedial Defendants are Retreat Apartments of Mobile, LLC; Huntsville Main Street Apartments, LLC; Mountain Ranch Apartments, LLC; Spring Lake Apartments Limited Partnership; Reserve Apartments, LLC; Cross Lake Apartments, LLC; Twin Creek Apartments, LLC; Whispering Ridge Apartments, LLC; Mountaineer Place Apartments, LLC; and Village at Quail Springs Apartments, LLC.  (Am. Compl. ¶¶ 23-32.)

**ARGUMENT**

I.    **The Amended Complaint States a Claim for Relief Under § 3604(f)(1) and (f)(2) Against the Owner Defendants for Continuing to "Rent" Nonconforming Dwelling Units and Public Use Spaces**

The Amended Complaint asserts that, by virtue of their offering to rent covered multifamily dwellings (and corresponding areas of public and common use) that are required by law to be accessible, but are not in fact accessible, the Owner Defendants are violating 42 U.S.C. § 3604(f)(1) and (f)(2).  (Am. Compl. ¶¶ 49-55, 67-70.)  By continuing to rent inaccessible covered dwelling units after construction is completed, the Owner Defendants are culpable for "making unavailable" or "denying" these dwelling units to people with disabilities, or for discriminating against such persons in the terms, conditions, or privileges of rental.  42 U.S.C. § 3604(f)(1)-(f)(2).

Movants contend that such a theory of liability is untenable.  Specifically, Movants contend that the claims against them are "based entirely upon the alleged noncompliant construction" of covered dwelling units by the Design/Build Defendants – and nothing else.  Movants suggest that such "artful pleading" of claims should be rejected.[5]  (BPTIC Mem. [Doc. No. 104] at 7; *see* Morgan Mem. [Doc. No. 111] at 8.)

But the (f)(1) and (f)(2) claims against the Owner Defendants in the Amended Complaint are *not* based solely on the design and construction violations of the Design/Build Defendants.

---

[5] Movants also suggest that the statute of limitations may bar some of Plaintiffs' claims in this case.  (Morgan Mem. [Doc. No. 111] at 6 n.1; BPTIC Mem. [Doc. No. 104] at 5 n.1.)  Movants argue that the limitations period as construed in design and construction claims under § 3604(f)(3) should also apply to claims under (f)(1) and (f)(2), but cite no legal authority to support this assertion.  Plaintiffs submit that their claims are timely filed under 42 U.S.C. § 3613, which provides that "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . ."  42 U.S.C. § 3613(a)(1)(A).  Moreover, "[a] motion to dismiss based upon an expired statute of limitations must be denied 'unless the plaintiff's allegations clearly indicate that the action is untimely.'"  *ABF Capital Corp. v. McLauchlan*, 167 F. Supp. 2d 1011, 1013 (N.D. Ill. 2001) (quoting *Schacht v. Baccala & Shoop Ins. Serv.*, No. 91 C 2228, 1993 WL 469909, at *4-*5 (N.D. Ill. Nov. 12, 1993)).  Defendants do not meet this standard.

6

To the contrary, the Amended Complaint clearly asserts that the Owner Defendants are liable by virtue of their offering to "rent" units that must be accessible to people with disabilities, but are not.  It is the Owner Defendants' own core business activity – *the rental of non-compliant dwelling units* – that gives rise to their liability under the Fair Housing Act, not the separate and independent "design and construction" violations of the Design/Build Defendants.  *See Harding*, 2011 WL 1457164, at \*4-\*6 (denying defendant's motion to dismiss because "the fact that [defendant] is not alleged to have participated in the design or construction of the [apartment complex], by itself, does not preclude [defendant] from being liable" for discrimination on the basis of disability under § 3604(f)(1) and (f)(2)).

    A.  The Language and Structure of 42 U.S.C. § 3604(f)

As with any question of statutory construction, the analysis must begin with the language of the statute itself.  *Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 987 (7th Cir. 2001); *United States v. Henderson*, 376 F.3d 730, 732 (7th Cir. 2004); *Mills v. United States*, 713 F.2d 1249, 1251 (7th Cir. 1983).

    1.  *42 U.S.C. § 3604(f)(1) and (2)*

The core prohibitory provisions of §3604(f) are found in subsections (f)(1) and (f)(2), which make it unlawful to discriminate in the "sale or rental" of dwellings based on disability.[6] Under subsection (f)(1), it is unlawful to "make unavailable or deny" a dwelling because of disability, while under subsection (f)(2) it is unlawful to discriminate "in the terms, conditions, or privileges of . . . rental" because of disability.

---

[6] The FHAA uses the term "handicap" instead of the term "disability."  Both terms have the same legal meaning. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998) (noting that definition of "disability" in the Americans with Disabilities Act is drawn almost verbatim "from . . . the definition of 'handicap' contained in the Fair Housing Amendments Act of 1988").  Except when referring to the statutory language of the FHAA, this Opposition uses the term "disability," which is more generally accepted.

This is the activity of the Owner Defendants challenged in this case – the knowing or negligent *rental* of dwelling units (particularly units that were first built for occupancy after March 13, 1991, the effective date of 42 U.S.C. § 3604(f)(3)(C) accessibility requirements) that are not accessible to people with disabilities.  (Am. Compl. ¶¶ 68-69.)  A person using a wheelchair or other mobility aid is effectively excluded from the opportunity to live in a particular dwelling by steps with excessively high thresholds at building or unit entrances, or by excessive running slopes on the route to covered units.  (Am. Compl. ¶¶ 6, 33.)  Plaintiffs allege that, due to the architectural barriers prevalent throughout the Owner Defendant properties – architectural barriers that under the FHAA should not be present – the Owner Defendants are "making unavailable or denying" their units to people with disabilities, and those associated with them, in violation of 42 U.S.C. § 3604(f)(1) and (f)(2).  (*See, e.g.*, Am. Compl. ¶¶ 50 (identifying specific barriers existing at Village at Rice Hope), 51-55 (identifying specific barriers at other Owner Defendant properties).)  *See also NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287 (7th Cir. 1992) (construing the parallel "unavailable or deny" and "terms and conditions" provisions of § 3604(a) and (b) to hold that discriminatory practices of homeowners insurers are prohibited, even though insurers are not mentioned in the statute).

A recent district court case has adopted this precise interpretation of (f)(1) and (f)(2) – specifically, that a plaintiff can establish a cause of action against the current owner of an apartment complex under (f)(1) and (f)(2) for the owner's failure to provide the required accessible and adaptable features.  *Harding*, 2011 WL 1457164, at *4-*6.

2. *42 U.S.C. § 3604(f)(3)*

In contrast, the design/build prohibitions found in 42 U.S.C. § 3604(f)(3) are identified by the statute as *examples* of conduct or behavior that should be considered "discrimination" within the more general language of subsections (f)(1) and (f)(2).  Subsection (f)(3) begins:

"(3) For purposes of this subsection, discrimination *includes* – "

42 U.S.C. § 3604(f)(3) (emphasis added).  Notably, subsection (f)(3) does not purport to be an exhaustive list of prohibitory discriminatory behavior.  Rather, it merely clarifies that the practices listed there must be construed by the courts to be encompassed within the broader prohibitory language found in (f)(1) and (f)(2).[7]

A deeper analysis of subsection (f)(3) reveals that there was a distinct purpose for Congress to structure § 3604(f) in this fashion.  Unlike provisions found in most other civil rights laws,[8] subsection (f)(3) *imposes affirmative duties and obligations in favor of people with disabilities* that go beyond the traditional prohibitions against "differing treatment."  So, for example, subsection (f)(3) requires landlords to make "reasonable accommodations" in rules and policies when doing so is necessary for people with disabilities to use a dwelling.  42 U.S.C. § 3604(f)(3)(B).  It also requires an owner of property to permit disabled persons to make "reasonable modifications" in existing structures when doing so will allow full enjoyment of the premises.  42 U.S.C. § 3604(f)(3)(A).  Also germane to this lawsuit, subsection (f)(3) requires architects, builders, and developers to "design and construct" covered multifamily dwellings

---

[7]  *See also* H.R. Rep. No. 100-711, at 24 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2186 (hereinafter "H.R. Rep. 100-711") (observing that § 3604(f)(3) "sets out specific requirements to *augment* the general prohibitions under (f)(1) and (2)") (emphasis added).

[8]  The Americans With Disabilities Act, 42 U.S.C. §§ 12182-12183, also contains provisions imposing affirmative obligations on the developers and owners of commercial property, in addition to traditional "no differing treatment" prohibitions.

after March 13, 1991 so that they are accessible to people with disabilities.  42 U.S.C. § 3604(f)(3)(C).

The Amended Complaint does not seek to hold the Owner Defendants liable for "design and build" activity that fails to comply with § 3604(f)(3).  The Amended Complaint asserts (f)(3) violations against only the Design/Build Defendants.  Rather, the Complaint asserts liability against the Owner Defendants based on their knowingly or negligently attempting to "rent" covered dwelling units, particularly units that were built for first occupancy after March 13, 1991, and that are required to be accessible to people with disabilities, but are not.  This is not a "bootstrap" of the separate and independent design/build violations set forth in 42 U.S.C. § 3604(f)(3).  It is a straightforward application of the plain language of § 3604(f)(1) and (2) relating to the rental of dwellings.  *See Harding*, 2011 WL 1457164, at *4-*6.

### 3.   How § 3604(f)(1), (2), and (3) Operate Together

The other rule of statutory construction at play here is the obligation to construe all provisions of a statute together.  *Smith v. Zachary*, 255 F.3d 446, 448 (7th Cir. 2001) ("'It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'") (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)); *United Transp. Union-Illinois Legislative Bd. v. Surface Transp. Bd.*, 183 F.3d 606, 612 (7th Cir. 1999) ("Statutory provisions are to be interpreted to be consistent with one another.").

The development of new multifamily dwelling units covered by the FHAA involves a multitude of players, all involved in the different stages of the process for bringing covered units to market.  Architects design.  Builders build.  Owners rent.  Rarely are all these functions

performed by a single entity.  Indeed, typically (although not always) each function is performed by a separate and independent company with particular expertise in its own area.

Section 3604(f) is designed to cover them all.  Subsections (f)(1) and (f)(2) apply generally to any behavior that "denies" or "makes unavailable" or involves "different terms and conditions" of rental, behaviors typically associated with the business of renting dwelling units. Subsection (f)(3)(C) applies specifically to those who design and/or build non-conforming dwelling units and associated areas of public use.  Read as a whole, and giving effect to each of its subparts, § 3604(f) is therefore structured to apply to the entire spectrum of behaviors that could result in inaccessible multifamily housing, particularly multifamily housing constructed and placed on the market after March 1991, where, contrary to the intent of Congress, the new units become available for rental by people without disabilities, but not by people with disabilities.

Movants would have the court construe § 3604(f) in such a way as to *immunize owners from any liability at all* for knowingly or negligently attempting to rent units that have been built in clear violation of the FHAA.  Under Movants' theory, owners of units built after March 1991 that offer such units for rental – where they are available only to people without disabilities – would never be liable under the FHAA, despite the clear language of § 3604(f)(1) and § 3604(f)(2).  Yet, housing providers cannot refuse to rent to people with disabilities or discriminate in "the terms, conditions, or privileges of . . . rental," 42 U.S.C. § 3604(f)(1)-(2); evict tenants because they become impaired, *Radecki v. Joura,* 114 F.3d 115 (8th Cir. 1997); 24 C.F.R. § 100.60(b)(5); deprive people with disabilities of the opportunity to live in a certain location or a part of the complex,  *HUD v. George*, Fair Housing—Fair Lending Reptr. ¶ 25,010, at 25,164 (HUD ALJ 1991) (see opinion in attached Appendix of Cases Not Generally

Reported); 24 C.F.R. § 100.70(c)(4); employ techniques that may be used to make people with disabilities unwelcome such as disparate applicant selection inquiries, *see Laflamme v. New Horizons, Inc.*, 605 F. Supp. 2d 378 (D. Conn. 2009); *Neiderhauser v. Independence Square Housing*, Fair Housing—Fair Lending Reptr. ¶ 16,305, at 16,305.7 (N.D. Cal. 1998) (see opinion in attached Appendix of Cases Not Generally Reported); 24 C.F.R. §§ 100.60(b)(4), 100.202(c); or deny people with disabilities access to recreation facilities, parking privileges, or any other privilege or service that is available to other residents, 24 C.F.R. § 100.202(b).

Here, the Owner Defendants have made housing unavailable by knowingly or negligently failing to provide access to a protected class. For example, by failing to provide an accessible route for people with mobility impairments from handicapped parking to covered housing units (Am. Compl. ¶¶ 50(a), 52(a), 53(a)), to mail boxes (Am. Compl. ¶ 51(a)), to the pool (Am. Compl. ¶ 53(b)), to the leasing office (Am. Compl. ¶ 54(a)), and to common use bathrooms (Am. Compl. ¶¶ 51(a), 52(b), 54(a), 55(a)), the Owner Defendants have effectively turned people with disabilities away or otherwise discouraged them from living in their apartment complexes.[9]

The fallacy of Movants' position – that the Owner Defendants can never be liable under (f)(1) and (f)(2) – is demonstrated by a recent district court ruling. In *Harding v. Orlando Apartments, LLC*, the court denied a current owner's motion to dismiss, ruling that the plaintiff (a tester) had stated a claim against the owner (BHDR) for its failure to provide required accessible and adaptable features in the District, a multi-family apartment complex. *See Harding*, 2011 WL 1457164, at *4-*6. The court explained that "the fact that BHDR is not

---

[9] Moreover, giving tenants the right to make modifications in their units at their own expense, as Congress did in 42 U.S.C. § 3604(f)(3)(A), does not absolve housing providers from the prohibition against discrimination in 42 U.S.C. § 3604(f)(1) and (2). Although tenants may make *further* changes to their units, housing providers must include *basic* accessibility and adaptability features as set forth in § 3604(f)(3)(C). Refusing to do otherwise is discrimination under § 3604(f)(1) and (2).

alleged to have participated in the design or construction of the District, by itself, does not preclude BHDR from being liable under Section 3604(f)(1) for maintaining deficient components that render a covered dwelling 'unavailable' to a prospective renter because of a handicap." *Id.* at *5. The court went on to state that "[e]ven if the allegedly inaccessible features do not make the District apartments 'unavailable' to Plaintiff in violation of [Section] 3604(f)(1), those deficiencies are prohibited under Section 3604(f)(2), which bars discrimination against persons with disabilities in, *inter alia,* the 'privileges of sale or rental of a dwelling' and in the 'facilities in connection with such dwelling' because of a person's handicap." *Id.* (quoting 42 U.S.C. § 3604(f)(2)).

The construction of the FHAA presented by Plaintiffs is consistent not only with the district court's decision in *Harding*, but with the Seventh Circuit's interpretation of the parallel race-based provisions of the FHA, found at 42 U.S.C. § 3604(a) and (b). *Am. Family Mut.*, 978 F.2d at 298. There the court held that racially discriminatory insurance practices which make housing "unavailable" are prohibited by § 3604(a) and § 3604(b), even though insurers are not specifically mentioned in the statute. "The Fair Housing Act does not define key terms such as 'service' and 'make unavailable'. By writing its statute in the passive voice – banning an outcome while not saying *who* the actor is, or *how* such actors bring about the forbidden consequence," Congress left the door open for the statute to be applied to the business of insurers. *Id.* at 298.[10]

---

[10] *See also Doering v. Pontarelli Builders, Inc.*, No. 01 C 2924, 2001 WL 1464897, at *4 (N.D. Ill., Nov. 16, 2001) (Subsection 3604(f) "is not a description of *who* is liable. Rather, it is a description of what actions constitute discrimination.") (emphasis in original).

B.  The Legislative History of 42 U.S.C. § 3604(f)

Plaintiffs believe the language and structure of 42 U.S.C. § 3604(f) is unequivocal, and compels the conclusion that the Owner Defendants can be liable for continuing to rent dwelling units that do not comply with the accessibility requirements of the Act.  But if a court believes the language of a statute is ambiguous on a point of law at issue, the court may look to its legislative history to aid in construction.  *Newsom v. Friedman,* 76 F.3d 813, 816 (7th Cir. 1996) ("A court may examine legislative history when it encounters language in a statute that is undeniably *ambiguous*, but it should be the final option."); *United States v. Hudspeth,* 42 F.3d 1015, 1022 (7th Cir. 1994) ("[W]e may turn to the legislative history to interpret a statute only when the statute is ambiguous."); *Monterey Coal Co. v. Fed. Mine Safety and Health Review Comm'n*, 743 F.2d 589, 595 (7th Cir. 1984) ("[T]he plainer the statutory language, the more explicit, convincing and reliable the contrary legislative history must be to persuade a court to follow the indications in the legislative history.").

The legislative history of the FHAA, and the House Report in particular, fully supports Plaintiffs' interpretation of § 3604(f).  Passed with overwhelming congressional approval from both houses,[11] the FHAA imposes a statutory mandate that all new multi-family dwellings designed and constructed after March 13, 1991, be fully "accessible to" and "usable by" people with disabilities.  Congress enacted the FHAA design and construction accessibility requirements as just one part of a comprehensive revision of the Fair Housing Act to prohibit discrimination in the rental or sale of housing on the basis of disability, and to ensure that covered multifamily units and common areas put into service after March 1991 were accessible to people with disabilities. The decision to add disability discrimination to the Fair Housing Act was "a clear pronouncement of a national commitment to end the unnecessary exclusion of persons with

---

[11] The Act passed in the House by a vote of 376-23 and in the Senate by a vote of 94-3.

handicaps from the American mainstream."   H.R. Rep. No. 100-711, 100th Cong., 2d Sess., at

18 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2173 (hereinafter "H.R. Rep. 100-711").

 The House Report explains that § 3604(f)(2) "is intended to prohibit . . . conditions . . .

which have the effect of excluding" people with disabilities, and the provision would "guarantee

that an individual could not be discriminatorily barred from access to recreation facilities,

parking privileges . . . and other facilities, uses of premises, benefits and privileges made

available to other tenants, residents, and owners."  H.R. Rep. No. 100-711, at 23.  Significantly,

and for purposes of the statutory construction issue at bar, "to the extent that terms, conditions,

privileges, services or facilities operate to discriminate against a person because of a handicap,

*elimination of the discrimination would be required in order to comply with the requirements of*

*this subsection*."  *Id.* at 23-24.  It is precisely this section of the House Report which the court in

*Harding* relied upon in finding that "[t]he legislative history underlying Section (f)(2) makes

clear that the failure to remedy deficiently constructed components of an apartment building may

constitute discrimination pertaining to the 'facilities in connection with a dwelling.'" *Harding*,

2011 WL 1457164, at *5.  Thus, Congress understood that the owners of rental property would

ultimately, pursuant to § 3604(f)(2), be responsible for eliminating those conditions that have the

effect of excluding people with disabilities from the full enjoyment of rental property.

 The legislative history of the FHAA stresses that enforcement of civil rights laws is

necessary to protect people with disabilities from the "devastating" impact of housing

discrimination, including the "architectural barriers" erected when developers fail to construct

dwellings and public use areas accessible to and adaptable by people with disabilities.  H.R. Rep.

No. 100-711, at 25.  Although inaccessible housing might be the product of "thoughtlessness and

indifference" as opposed to "blatant, intentional" discrimination, Congress recognized that

"[a]cts that have the effect of causing discrimination can be just as devastating as intentional discrimination." *Id.* at 25. "A person using a wheelchair is just as effectively excluded from the opportunity to live in a particular dwelling by the lack of access into a unit and by too narrow doorways as by a posted sign saying 'No Handicapped People Allowed.'" *Id.*; *accord* 134 Cong. Rec. S19720 (statement of Sen. Harkin). The design, construction, and rental of inaccessible housing perpetuate the exclusion of people with disabilities. Moreover, as the population ages and the demand for accessible housing increases, even more people will be excluded from mainstream society. *See* 134 Cong. Rec. S19270 (statement of Sen. Harkin).

    C. <u>Judicial Construction of the FHAA</u>

The Fair Housing Act carries out a "policy that Congress considered to be of the highest priority," and therefore must be given "a generous construction" by the courts. *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 211-12 (1972). This mandate for a generous construction by a unanimous Supreme Court has become the foundation for all subsequent judicial interpretations of the Fair Housing Act. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982) (unanimous recognition of "the broad remedial intent of Congress" embodied in the Act); *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 731 (1995) (reaffirming *Trafficante*'s recognition of the Act's "broad and inclusive compass" and its entitlement to a "generous construction" (internal quotation marks omitted)).

The courts have specifically recognized the paramount national policy embodied in the design and construction requirements of the Act. "Congress has indicated that obliterating discrimination against disabled individuals at all levels in housing is a priority." *United States v. Edward Rose & Sons*, 246 F. Supp. 2d 744, 755 (E.D. Mich. 2003), *aff'd*, 384 F.3d 258 (6th Cir. 2004). The design and construction language of the Act must be construed broadly, for "[t]o

16

hold otherwise would defeat the purpose of the FHAA to create available housing for handicapped individuals and allow wrongful participants in the design and construction process to remain unaccountable." *Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc.*, 3 F. Supp. 2d 661, 665 (D. Md. 1998).

Courts have routinely rejected efforts by defendants in FHAA cases to avoid liability with overly technical readings of the language in § 3604(f).[12]  In this Circuit, the U.S. District Court for the Southern District of Illinois has issued a number of rulings construing the breadth, scope, and meaning of § 3604(f).  *See United States v. Shanrie Co., Inc.*, 2007 U.S. Dist. Lexis 23587 (S.D. Ill. Mar. 30, 2007) (and related rulings).  There the district court has observed that "neither the FHAA [n]or the regulations directly address who may be held liable for violations of the FHAA."  *Id.* at *25.  Relying on *Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc.*, the court concluded that "Congress intended the FHAA to impose liability on more than just the developer or owner in light of the broad language in the statute . . . and the fact that there is no express limitation on possible defendants in the statute . . . ."  *Id.* at *26.  In essence, any entity who contributes to a violation of the FHAA would be liable.  *Id.*

Moreover, the *Harding* court is not alone in interpreting the FHAA to require current owners to ensure that their apartments meet minimum accessibility requirements, even if they were not involved in the design and construction of the housing.  For example, in *Kuchmas v. Towson University*, 553 F. Supp. 2d 556 (D. Md. 2008), the court expressly distinguished between the liability of those involved in the original design and construction of non-conforming

---

[12] For example, some defendants have argued that there can be no liability under the "failure to design and construct" language of § 3604(f)(3) unless a defendant was involved in both the design *and* the construction of the non-conforming dwelling units.  Courts have rejected this narrow interpretation of § 3604(f).  *See, e.g.*, *Montana Fair Hous. v. Am. Capital Dev., Inc.*, 81 F. Supp. 2d 1057, 1068-69 (D. Mont. 1999); *Baltimore Neighborhoods*, 3 F. Supp. 2d at 664-65; *United States v. Hartz Construction Co., Inc.*, No. 97 C 8175, 1998 WL 42265, at *1 (N.D. Ill. Jan. 28, 1998).  As one court has observed, the notion that each of the parties working together in a single process, one performing the first function and the other performing the second function, can escape liability based on their limited role, "is a frank absurdity."  1998 WL 42265, at *1.

units, and those involved in the current leasing of those units.  *Id.* at 562-63.  In the context of a motion to dismiss filed by the current owners based on the statute of limitations, the court embraced an interpretation of the FHAA that "would establish an ongoing duty on the part of the entities in control of a building to make corrections to bring it into compliance with the FHA . . . ."  *Id.*  Unlike those involved in the design and construction process, the court held, "the current Defendants . . . continue to be involved in the leasing of noncompliant apartments.  Thus, even if the true cause of the noncompliance was mere neglect or oversight during the design and construction phases, the remaining Defendants continue to benefit from that oversight by renting inaccessible units . . . ."  *Id.*

The *Kuchmas* reasoning was adopted and applied by another district court in *Sentell v. RPM Management Co., Inc.*, 2009 U.S. Dist. LEXIS 75126 (E.D. Ark. Aug. 24, 2009).  Again faced with a statute of limitations defense, the court refused to dismiss claims against the owner of a nonconforming apartment complex who was not involved in its design or construction. The court cited *Kuchmas* for the proposition that "the owners and managers of the property had an ongoing duty in light of their control of the property so that the statute of limitations began to run . . . when the plaintiff leased a unit."  *Id.* at *10.

D.  <u>FHAA Policy and Common Law Tort Principles</u>

An action brought under the Fair Housing Act is "in effect, a tort action."  *Meyer v. Holley,* 537 U.S. 280, 285 (2003); *see also Curtis v. Loether*, 415 U.S. 189, 195 (1974) (the Fair Housing Act "sounds basically in tort").  So when it enacted the Fair Housing Act, Congress intended ordinary tort-related liability rules to apply under the Act.  *Meyer*, 537 U.S. at 285.  In *Meyer*, those traditional rules of tort liability, as applied to principals and agents, compelled the

18

conclusion that principals and employers are vicariously liable under the Act for the unlawful acts of their employees.  *Id.*

In the case at bar, those traditional rules of tort liability, as applied to owners of rental property, compel the conclusion that owners can be liable under the Act for injury that occurs on their property – including injuries caused by defective construction conditions.  Under traditional principles of tort liability, owners of property may be liable for injuries caused to tenants and others that occur on their leased premises.  Restatement (Second) of Prop., Landlord & Tenant §§ 17.1, 17.6 (1977).  An owner is liable for injuries, sustained on the rented property, which are proximately caused by the owner's failure to fulfill the duties imposed by law.  *See id.* § 17.6(2).  A violation of a statute can constitute negligence *per se*.  *Id.* § 17.6 cmt. a; *see also C.A. ex rel Aguinaga v. AMLI at Riverbend, L.P.*, No. 1:06-cv-01736-SEB-DML, 2010 WL 3326847, at *8 (S.D. Ind. Aug. 20, 2010) ("The unjustified violation of a duty prescribed by statute or ordinance constitutes negligence per se if the statute is intended to protect the class of persons in which the plaintiff is included and against the risk of the type of harm which has occurred as a result of its violation.") (citing *Ray v. Goldsmith,* 400 N.E.2d 176 (Ind. Ct. App. 1980)).  Thus, a landlord can be held liable to its tenant for harmful construction conditions when: (1) it knows, or should have known, of harmful conditions that violate a statute or administrative regulation, (2) it fails to exercise reasonable care to correct those conditions, and (3) the harmful conditions result in injury to the tenant.  *See* Restatement (Second) of Prop., Landlord & Tenant § 17.6 & cmt. c (1977).  There is no requirement at common law that the landlord actively participate in the creation of the harmful conditions.[13]

---

[13] *See* Restatement (Second) of Prop: Landlord & Tenant §17.6, which states:
"A landlord is subject to liability for physical harm caused to the tenant and others upon the leased property * * * by a dangerous condition existing before or arising after the tenant has taken possession, if he has failed to exercise reasonable care to repair the condition and the existence of the condition is in violation

The obligations that landlords have to tenants extend to any person who is legally on the landlord's property.  *Id.* §  17.1(1) & cmt. g, k.  Thus, a non-tenant can recover damages from a landlord due to injuries the third party sustains from harmful conditions on the landlord's property.  Almost all states have abrogated the traditional rule of landlord non-liability in favor of a rule imposing a duty of reasonable care on landlords "for conditions of which he is aware, or of which he could have known in the exercise of reasonable care."  Restatement (Second) of Property, Landlord & Tenant, § 17.6 & cmt. c.  *See, generally*, Robert Schwemm, *Barriers to Accessible Housing: Enforcement Issues in Design and Construction Cases Under the Fair Housing Act*, 40 U. Rich. L. Rev. 753, 796-99 (2006) (discussing common law development of landlord liability and its relevance to fair housing violations).

It is reasonable to conclude, therefore, that Congress intended the same behaviors that give rise to landlord liability under the common law or other statutes to give rise to liability under the Fair Housing Act.  Because the Fair Housing Act is to be interpreted liberally, and embodies a national policy "of the highest priority," § 3604(f)(1) and (2) should be construed consistently with the common law, so as to impose liability on owners of inaccessible property built in violation of the FHAA.

E.  Conclusion

Sections 3604(f)(1) and (f)(2) are valid bases upon which to state a claim against the Owner Defendants in this case.  By knowingly or negligently continuing to rent inaccessible covered dwelling units, the Owner Defendants are culpable for "making unavailable" or "denying" these dwelling units to people with disabilities, or for discriminating against such

---

of:
  "(1) an implied warranty of habitability; or
  "(2) a duty created by statute or administrative regulation."
There is no requirement under §17.6 that the landlord itself "created" the condition.

persons in the terms, conditions, or privileges of rental.  42 U.S.C. § 3604(f)(1)-(f)(2); *Harding*,

2011 WL 1457164, at *4-*6.  These subsections are not mere "bootstraps" of the separate and

independent design/build obligations contained in §3604(f)(3), but rather are general prohibitions

against the rental of inaccessible dwelling units that should be, but are not, compliant with the

FHAA.[14]

## II.     The Amended Complaint Does Not Need to Identify a Specific Affected Individual or Instance of Discrimination in Order to State a Claim for Relief

Movants also seek dismissal of the Amended Complaint on the ground that Plaintiffs

"fail[] to identify any disabled individual who faced such alleged discrimination, or any specific

instance of such allegedly discriminatory conduct."  (Morgan Mem. [Doc. No. 111] at 7; *see also*

BPTIC Mem. [Doc. No. 104] at 6.)  However, Plaintiffs, as fair housing organizations, have

organizational standing sufficient to challenge Defendants' discrimination.  Moreover, Plaintiffs

need not identify specific individuals or instances of discrimination to establish a claim based on

discriminatory policy.  Rather, Plaintiffs' allegations – based on strong testing evidence – are

sufficient to defeat Movants' Motions to Dismiss on this ground.

### A.      Plaintiffs Have Organizational Standing to Pursue Their Claims, Which Does Not Require Allegations of Specific Affected Individuals

Movants' attempt to dismiss the Amended Complaint on the foregoing ground flies in the

face of clearly established legal precedent.  Neither Supreme Court nor Seventh Circuit

precedent requires fair housing organizations to identify individual victims or specific instances

of discrimination in order to state a claim under the FHAA.  Because Plaintiffs have "deflect[ed]

. . . time and money from counseling to legal efforts directed against discrimination," they satisfy

---

[14] Even if the Court should conclude that Plaintiffs fail to state a claim under § 3604(f)(1) or (f)(2), the Owner Defendants must remain in the case as necessary parties for relief, as described in Part III of this brief.

the requirements of "organizational standing" and may bring this case on their own behalf.  *See Village of Bellwood v. Dwivedi,* 895 F.2d 1521, 1526 (7th Cir. 1990).

In *Havens Realty Corp. v. Coleman*, the Supreme Court held that a fair housing organization has Article III standing[15] to sue if the organization has suffered a "concrete and demonstrable injury to the organization's activities."  455 U.S. at 379.  In its complaint, HOME (the organizational plaintiff in *Havens Realty*) alleged that it had "been frustrated by defendant's racial steering practices in its efforts to assist equal access to housing through counseling and other referral services . . . and had to devote significant resources to identify and counteract the defendants' racially discriminatory steering practices."  *Id.* at 379 (citation and internal quotation marks omitted).  The Supreme Court concluded that HOME satisfied the requirements of Article III standing, ruling that "[s]uch concrete and demonstrable injury to the organization's activities – with the consequent drain on the organization's resources – constitutes far more than simply a setback to the organization's abstract social interests."  *Id.*

According to the Seventh Circuit, "the only injury which need be shown to confer standing on a fair-housing agency is deflection of the agency's time and money from counseling to legal efforts directed against discrimination."  *Dwivedi,* 895 F.2d at 1526.  Thus, the express terms of *Dwivedi* provide that allegations of individual injury are not necessary for organizational standing.  Similarly, other circuits applying *Havens* have routinely found organizational standing when a fair housing organization identified and counteracted housing discrimination independent from an individual complaint.[16]

---

[15] Article III standing requires that a plaintiff establish three elements: (1) that plaintiff "suffered an 'injury in fact'"; (2) that "a causal connection [exists] between the injury and the conduct complained of"; and (3) that plaintiff's injury is "likely" to be "redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

[16]  *See Village of Olde St. Andrews*, 210 F. App'x 469, 478 (6th Cir. 2006); *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105-06 (9th Cir. 2004); *Cabrera v. Jakabovitz*, 24 F.3d 372, 377-79 (2d Cir. 1994) (affirming liability

Movants cite no reliable authority in support of their assertion that Plaintiffs must identify specific victims and instances of discrimination.[17]  In fact, several courts of appeal have considered *and repudiated* Movants' rationale.  In *Fair Housing Council, Inc. v. Village of Olde St. Andrews*, 210 F. App'x 469 (6th Cir. 2006), the Sixth Circuit expressly rejected the builder's argument that the lack of a *bona fide* complainant precluded the fair housing agency's standing, holding:  "Regardless of whether an organization learns of potential discrimination through independent complaints or through its own observations, any action it takes in combating that discrimination is fairly traceable to the defendant's discriminatory acts."  *Id.* at 478.  In *Smith v. Pacific Properties & Development Corp.*, 358 F.3d 1097 (9th Cir. 2004), the Ninth Circuit likewise held that the plaintiff fair housing organization had standing to sue in its own right where it initiated a programmatic investigation of FHAA compliance in multi-family housing developments throughout the county, without requiring that the testing program be prompted by an individual discrimination complaint.  *Id.* at 1099, 1105-06; *see also Cent. Ala. Fair Hous. Ctr. v. Lowder Realty Co.*, 236 F.3d 629, 642 (11th Cir. 2000) ("In allowing the [*Havens*] case to proceed, the Supreme Court in no way held or even suggested that the organization's right to judicial relief would be tied to a successful recovery" by "individual, bona fide purchaser plaintiffs."); *Harding*, 2011 WL 1457164, at *3 ("that Plaintiff visited … only to 'test' for FHA

judgment where fair housing organization on its own initiative sent testers to investigate racial steering at defendant's rental properties); *Nat'l Fair Hous. Alliance v. A.G. Spanos Constr., Inc.*, 542 F. Supp. 2d 1054, 1064-65 (N.D. Cal. 2008) (upholding Plaintiff National Fair Housing Alliance, Inc.'s organizational standing in a case involving similar violations of the FHAA); *Wai v. Allstate Ins. Co.*, 75 F. Supp. 2d 1, 4 (D.D.C. 1999) (stating that the absence of an individual complainant was "irrelevant" to organizational standing).

[17]  Morgan Defendants mistakenly rely on a single case, *Fincher v. South Bend Housing Authority*, 612 F. Supp. 2d 1009 (N.D. Ind. 2009), to argue that Plaintiffs fail to establish a prima facie case under the FHAA.  (Morgan Mem. [Doc. No. 111] at 7.)  *Fincher* requires that a plaintiff "show that he is 1) a member of a protected class; 2) the defendant was aware of plaintiff's class membership; 3) plaintiff was ready, willing and able to buy, rent or otherwise inhabit the dwelling; and 4) the defendant refused to deal with him."  612 F. Supp. 2d at 1025 (citing *Hamilton v. Svatik*, 779 F.2d 383, 387 (7th Cir. 1985)).  But the prima facie case analysis discussed in *Fincher* does not apply in a situation like this where the policy being challenged is discriminatory on its face.  *Reidt v. County of Trempealeau*, 975 F.2d 1336, 1340-41 (7th Cir. 1992); *Cmty. House, Inc. v. City of Boise, Idaho*, 468 F.3d 1118, 1121 (9th Cir. 2006).

23

compliance and allegedly found noncompliant features which remain in effect is sufficient injury in fact 'fairly traceable' to BHDR to confer standing.").   Movants' argument that an organization cannot state a claim for relief under the Fair Housing Act unless it acts in response to an individual complaint of discrimination has no support under this Circuit's precedent, and embracing it would place this Court squarely at odds with the Sixth, Ninth, and Eleventh Circuits.

In this case, Plaintiffs allege that all Defendants "frustrated the missions of Plaintiffs, and caused Plaintiffs to divert their scarce resources in an attempt to redress these violations" (Am. Compl. ¶ 7) – injuries that are sufficient to establish organizational standing under both *Havens* and *Dwivedi*.  As part of their missions to eradicate discrimination in housing, Plaintiffs carry out various programs and services, "including encouraging integrated living patterns, educating the public about fair housing rights and requirements, educating and working with industry groups and others on fair housing compliance, and providing counseling services to persons either looking for housing or affected by discriminatory housing practices . . . ."  (*Id.* ¶ 56.)  Due to Defendants' unlawful design, construction, and rental of noncompliant housing units, Plaintiffs aver that they have been forced to divert scarce resources away from these programs and toward efforts "to identify, investigate and counteract the Defendants' discriminatory practices."  (*Id.* ¶ 58.)  These efforts included testing investigations at six residential complexes (including Brooklyn Place, Overlook at Golden Hills, and Crescent at Wolfchase) and providing additional educational programs to rebut the impression that constructing or renting non-compliant residential housing is acceptable.  (*Id.* ¶ 57, 59.)  Finally, Plaintiffs claim that the injuries they have suffered due to frustration of mission and diversion of resources will only continue absent remediation of Defendants' conduct.  (*Id.* ¶ 60.)

The Seventh Circuit has upheld organizational standing upon similar showings by plaintiff organizations. *See, e.g.*, *City of Chicago v. Matchmaker Real Estate Sales Ctr., Inc.*, 982 F.2d 1086, 1095 (7th Cir. 1992) (determining that by conducting a fair housing investigation, the plaintiff organization "deflected its time and money from counseling to legal efforts directed against discrimination" and "therefore has standing to sue"); *Access Living of Metro. Chicago v. Chicago Transit Auth.*, No. 00-0770, 2001 WL 492473, at *4 (N.D. Ill. May 9, 2001) (finding organizational standing because the "time spent fighting [defendant's] discrimination would otherwise be spent counseling, providing independent living skills training and referral services, advocating for the rights of the disabled, and otherwise fulfilling [plaintiff's] legislatively mandated care services requirements to the disabled").

Plaintiffs are not seeking compensation for injuries inflicted upon others; instead they seek an injunction against the continued rental of dwelling units that should have been constructed in compliance with the accessibility standards of the FHAA, but were not, and compensation for injuries they suffer as organizations due to Defendants' discriminatory conduct. Whether a fair housing organization becomes aware of accessibility barriers because, for example, its staff observes a potential design defect in the steps to a new apartment building, *Village of Olde St. Andrews*, 210 F. App'x at 469, it audits all the multi-family dwellings in its service area, *Smith*, 358 F.3d at 1099, or it receives an individual complaint, the injury to its mission and its resources is the same under *Havens* and *Dwivedi*, and it may assert a claim for relief under the Fair Housing Act.

B.    <u>Plaintiffs Allege a Policy of Discrimination Supported By Testing Evidence, and Thus Need Not Identify Specific Individuals or Instances of Discrimination</u>

Despite Movants' assertions that Plaintiffs must allege a "specific instance" of discrimination, evidence of individual discrimination is not necessary to state a claim under the

FHAA when that claim is based on a discriminatory policy.  Rather, evidence that supports the existence of a discriminatory policy is sufficient.  *See, e.g.*, *United States v. Bd. of Educ. for the Sch. Dist. of Phila.*, 911 F.2d 882, 892 (3d Cir. 1990) (stating that "proof that the policy was actually being followed consistently is not necessary" when "the allegedly discriminatory policy is openly declared"); *United States v. Gregory*, 871 F.2d 1239, 1243 (4th Cir. 1989) ("[I]f the admissions [of a policy of discrimination] are credited, the . . . violation has been proven.").  In this case, Owner Defendants' continuing rental of units with overtly discriminatory architectural features constitutes a policy of discrimination, which is alleged in detail in the Amended Complaint.  (*See* Am. Compl. ¶¶ 53-55 (listing FHAA violations at Brooklyn Place, Overlook at Golden Hills, and Crescent at Wolfchase).)

Moreover, Movants contend that the Amended Complaint does not contain the factual allegations required by *Ashcroft v. Iqbal*, 129 S. Ct. at 1949, to rise beyond "mere 'legal conclusions' and 'naked assertions.'"  (BPTIC Mem. [Doc. No. 104] at 7; *see also* Morgan Mem. [Doc. No. 111] at 8.)  Yet Plaintiffs' Amended Complaint clearly meets the requirements of *Iqbal* as articulated in this Circuit by "identify[ing] the type of discrimination . . . , by whom . . . , and when . . . ."  *Swanson*, 614 F.3d at 405.  The Amended Complaint alleges that, since the acquisition of the apartment complexes, Owner Defendants have offered units for rental that they knew, or with the exercise of reasonable care should have known, were non-compliant with the accessibility requirements of 42 U.S.C. § 3604(f)(3)(C).  (*See* Am. Compl. ¶¶ 67-70.)  By doing so, Owner Defendants engaged in a policy of "otherwise mak[ing] unavailable or deny[ing]" a dwelling "because of a handicap" in violation of § 3604(f)(1) and/or of discriminating in the "privileges of sale or rental of a dwelling, or in the provision of services or facilities" in violation of § 3604(f)(2).

Finally, in their assertion that Plaintiffs "fail[] to identify any disabled individual who faced such alleged discrimination," Movants suggest that tester evidence is insufficient to establish a claim under 42 U.S.C. § 3604(f)(1) and (f)(2).  (Morgan Mem. [Doc. No. 111] at 7-8; *see also* BPTIC Mem. [Doc. No. 104] at 6.)  This argument ignores the fact that testing evidence is legitimate proof of discrimination in the Seventh Circuit.  For example, in *Village of Bellwood v. Dwivedi*, 895 F.2d at 1531, the court concluded that evidence of racial steering collected from the observations and experience of white and black testers established a prima facie case of discrimination – even though none of the testers were actually seeking housing.  *See Matchmaker Real Estate Sales Ctr.*, 982 F.2d at 1096 (finding sales agents liable for compensatory damages based on evidence that they consistently engaged in racial steering); *United States v. Balistrieri*, 981 F.2d 916, 929 (7th Cir. 1992) (rejecting defendants' argument "that because none of the testers were actually seeking apartments, there was no Fair Housing Act violation" and affirming tester evidence as evidence of a discriminatory housing policy).  In fact, this Circuit has explicitly "approved and sanctioned the role of 'testers,'" recognizing that "[i]t is frequently difficult to develop proof in discrimination cases and the evidence provided by testers is frequently valuable, if not indispensable."  *Richardson v. Howard*, 712 F.2d 319, 321 (7th Cir. 1983) (internal footnote and citations omitted).

As a result, the Amended Complaint meets the pleading standards under Seventh Circuit law.  Plaintiffs need not allege specific instances of discrimination against specific persons with disabilities.  Rather, the factual allegations regarding the Owner Defendants' policy of discrimination, including tester evidence, establish that Plaintiffs have stated a claim against the Owner Defendants under both § 3604(f)(1) and (f)(2).

III.    **Defendants Huntsville Main Street Apartments, LLC and Cross Lake Apartments, LLC are Necessary Parties for Complete and Meaningful Injunctive Relief**

In their Motions to Dismiss, the Morgan Defendants and Defendant Cross Lake both claim that "Plaintiffs fail to . . . state a cause of action" against Huntsville and Cross Lake. (Morgan Mem. [Doc. No. 111] at 9; *see* Cross Lake Mem. [Doc. No. 108] at 1.)  However, as stated clearly in the Amended Complaint, Plaintiffs seek to join Defendants Huntsville and Cross Lake as necessary parties for injunctive relief only, and therefore need not state a direct cause of action against either entity.

Plaintiffs here seek to enforce the FHAA against a group of Defendants who discriminate against people with disabilities by designing, constructing, and renting inaccessible apartment complexes.  (Am. Compl. ¶ 7.)  To remedy this discrimination, Plaintiffs request that the Court, *inter alia*, order the Design/Build Defendants to survey apartment communities in which they had a role in the design and construction since March 13, 1991; to assess the compliance of each with the FHAA; to report to the Court the extent of noncompliance with the FHAA; and to bring each apartment community into compliance with the FHAA and applicable regulations.  (*Id.*, Prayer for Relief, at 34.)  To effectuate that relief, Plaintiffs have joined ten "Remedial Defendants" to the action – including Defendants Huntsville and Cross Lake – who own apartment communities that the Design/Build Defendants have designed or built.  (*See id.* ¶¶ 8, 23-32.)  These properties "share common design features with the tested apartment complexes," and "Plaintiffs have reason to believe that similar FHAA accessibility violations may exist at these properties as well."  (*Id.* ¶ 8.)  In tandem with the injunctive relief sought from the Design/Build Defendants, Plaintiffs request that the Court enjoin the Remedial Defendants "from refusing to permit any survey and, where necessary, any retrofits of their respective property that may be ordered by this Court to bring these properties into full compliance with the FHAA."

28

(*Id.*)  Stated differently, the Design/Build Defendants are going to need access to the properties currently owned by the Remedial Defendants in order to make the necessary retrofits.  Inclusion of the Remedial Defendants ensures that the relief sought from Design/Build Defendants will result in a meaningful and complete remedy.

Pursuant to Federal Rule of Civil Procedure 19(a), joinder of Defendants Huntsville and Cross Lake as Remedial Defendants is feasible and necessary to "accord complete relief among existing parties."  Fed. R. Civ. P. 19(a)(1)(A).  Contrary to the Morgan Defendants and Defendant Cross Lake's argument otherwise, joinder under Rule 19(a) does not require that Plaintiffs state a cause of action against Huntsville or Cross Lake.  *See E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 781 (9th Cir. 2005) ("[A] plaintiff's inability to state a direct cause of action against an absentee does not prevent the absentee's joinder under Rule 19."); *Sierra Club v. Hodel*, 848 F.2d 1068, 1077 (10th Cir. 1988), *overruled on other grounds by Vill. of Los Ranchos De Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992) (permitting joinder of a party even though the plaintiff could not sue the party directly).  Rather, to determine whether a party is necessary for the purposes of Rule 19(a), the court must consider "(1) whether complete relief can be accorded without joinder, (2) whether [the Remedial Defendant's] ability to protect his interest will be impaired, and (3) whether the existing parties will be subjected to a substantial risk of multiple or inconsistent obligations unless [the Remedial Defendant] is joined."  *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001) (citing *Thomas v. United States*, 189 F.3d 662, 667 (7th Cir.1999)).

The first factor – "whether complete relief can be accorded without joinder" – is dispositive in this case.  If Remedial Defendants prevent or refuse the survey or retrofitting of their properties, the parties cannot realize a full remedy.  The FHAA violations at those

properties will continue to frustrate Plaintiffs' missions and consume time and money that would otherwise be spent on counseling, education, and outreach. Other courts considering this issue have concluded that current building owners are necessary parties for injunctive relief. *See Nat'l Fair Hous. Alliance v. A.G. Spanos Constr., Inc.*, 542 F. Supp. 2d 1054, 1066 (N.D. Cal. 2008) ("This Court is similarly persuaded that the Owner Class Defendants' presence in this case is necessary to effectuate the remedial relief plaintiffs seek, *viz.,* the retrofitting of the noncompliant properties."); *Rommel Builders*, 40 F. Supp. 2d at 711-12 (concluding that because plaintiffs seek only "to require [defendant condominium association] to permit the ordered relief in the form of retrofitting," the association's "presence as a party in the suit appears imperative in order to afford full relief, if necessary, recognizing it bears no financial obligation to plaintiffs in this case").

As a result, Defendant Cross Lake's arguments that Plaintiffs' allegations are too "speculative" to warrant its inclusion as a Defendant are misplaced. (*See* Cross Lake Mem. [Doc. No. 108] at 2-3.) Because Plaintiffs do not allege a cause of action against the Remedial Defendants, they do not need to meet the *Iqbal* pleading standards. Indeed, Plaintiffs only seek joinder of the Remedial Defendants to ensure that they allow their properties to be surveyed and retrofitted as ordered by this Court.

As the court noted in *Rommel Builders*, "the [FHAA] violations will continue to exist in perpetuity unless the Court exercises its equitable remedies to fashion a reasonable remedy." 40 F. Supp. 2d at 712. Plaintiffs submit that the joinder of Defendants Huntsville and Cross Lake as Remedial Defendants is necessary to ensure complete relief to the FHAA violations Plaintiffs seek to redress.[18]

---

[18] The relief requested by Plaintiffs is not unusual or unique. The Department of Justice routinely requests relief in their enforcement actions to compel design/build defendants to not only retrofit those properties with proven

## CONCLUSION

For the reasons set forth above, the Motions to Dismiss submitted by Morgan

Defendants, BPTIC Defendants, and Defendant Cross Lake must be denied.

Dated:  June 1, 2011.

Respectfully submitted,

  /s/ Michael G. Allen_____
Stephen M. Dane*
Michael G. Allen*
Thomas J. Keary*
RELMAN, DANE & COLFAX, PLLC
1225 19th Street, N.W., Suite 600
Washington, D.C. 20036
Tel: 202-728-1888
Fax: 202-728-0848
mallen@relmanlaw.com
sdane@relmanlaw.com
tkeary@relmanlaw.com

John Emry (Indiana Bar No. 8360-49)
JOHN EMRY LAW
62 W. Jefferson Street
Franklin, IN 46131
Tel:  317-736-5800
Fax:  317-736-6070
johnemrylaw@att.net

*Attorneys for Plaintiffs*

* *admitted pro hac vice*

---

violations, but also to survey other, covered, multifamily properties that they have designed or built, identify any violations and to bring the properties into full compliance with the FHAA.  *See, e.g., United States v. JPI Constr., LLC, et al.* (N.D. Tex.) (Complaint filed March 4, 2009), at 10, ¶ 3(c), *available at* http://www.justice.gov/crt/housing/documents/jpicomp.pdf; *United States v. Cogan, et al.* (W.D. Ky.) (Complaint filed August 10, 2010) at 6, ¶ b(i) & (ii), *available at* http://www.justice.gov/crt/housing/documents/cogancomp.pdf; *United States v. L&M 93rd Street LLC, et al.* (S.D.N.Y.) (Complaint filed September 30, 2010) at 7, ¶ 2(a) & (c), *available at* http://www.justice.gov/crt/housing/documents/lm_melarcomp.pdf.

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2011, a copy of the foregoing document and attachments thereto were electronically filed with the Clerk of the Court using the CM/ECF system and will be electronically sent to all parties of record by the Court's electronic filing system.

**David K. Herzog**
**Harmony A. Mappes**
**Paul A. Wolfla**
BAKER & DANIELS - Indianapolis
300 N. Meridian
Suite 2700
Indianapolis, IN 46204
(317) 237-1240
Fax: (317)237-1000
Email: david.herzog@bakerd.com
          harmony.mappes@bakerd.com
          paul.wolfla@bakerd.com

**John Carl Trimble**
**Stephanie Lynn Cassman**
**Theresa Renee Parish**
LEWIS WAGNER LLP
501 Indiana Avenue
Suite 200
Indianapolis, IN 46202
(317) 237-0500
Fax: (317) 630-2790
Email: jtrimble@lewiswagner.com
          scassman@lewiswagner.com
          tparish@lewiswagner.com

**Charles F.G. Parkinson**
HARRIS WELSH & LUKMANN
107 Broadway
Chesterton, IN 46304
(219) 926-2114
Fax: (219) 926-1503
Email: cparkinson@hwllaw.com

**Lori R. Koch**
GOFFSTEIN RASKAS POMERANTZ
KRAUS & SHERMAN, LLC
7701 Clayton Road
St. Louis, MO 63117-1371
Email:  lkoch@grlawstl.com

**Andrew W. Gruber**
**Casey Jo Eckert**
BINGHAM MCHALE LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN 46204
(317) 968-5381
(317) 968-5491
Fax: (317)236-9907
Email: agruber@binghammchale.com
          ceckert@binghammchale.com

**John J. Jewell**
TRIMBLE & JEWELL PC
P O Box 1107
706 Court Street
Evansville, IN 47706-1107
(812) 421-2979
Fax: (812) 421-2978
Email: jewell@evansville.net

**Christopher D. Oakes**
COX, OAKES & ASSOCIATES, LTD.
1051 Perimeter Drive
Suite 550
Schaumburg, IL 60173
(847) 240-0022
Email: cdoakes@coxattorneys.com

**John William Emry, Jr.**
62 West Jefferson Street
Franklin, IN 46131-2311
(317)736-5800
Fax: (317)736-6070
Email: johnemrylaw@att.net

I further certify that I have mailed a copy of the foregoing document via the U.S. Postal Service to the following non-CM/ECF participants:  None.

  /s/ Michael G. Allen
Michael G. Allen*
Stephen M. Dane*
Thomas J. Keary*
RELMAN, DANE & COLFAX, PLLC
1225 19th Street, N.W., Suite 600
Washington, D.C. 20036
Tel: 202-728-1888
Fax: 202-728-0848
mallen@relmanlaw.com
sdane@relmanlaw.com
tkeary@relmanlaw.com

*Attorneys for Plaintiffs*

*admitted pro hac vice*