UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

NATIONAL FAIR HOUSING ALLIANCE, )
INC., *et al.*,                                    )
                    Plaintiffs,                  )
                                                        )
        vs.                                           )                 1:10-cv-993-RLY-DML
                                                        )
S.C. BODNER COMPANY, INC., *et al.*,    )
                    Defendants.                 )

## ENTRY ON DEFENDANTS' MOTIONS TO DISMISS

The Fair Housing Act as amended in 1988 ("FHA") prohibits housing

discrimination on the basis of race, national origin, color, religion, sex, familial status or

disability and applies to both private and government assisted housing.  42 U.S.C. §§

3601- 3619.  Since 1991, in order to comply with the FHA it is a requirement that

multifamily housing of four or more units be designed and built in a manner which allows

for ready use and access by persons with disabilities.  42 U.S.C. § 3604(f)(3)(C).  In

addition, the FHA prohibits discrimination against persons with disabilities in the sale,

rental, occupancy or provision of services with regard to such housing, regardless of

when it was designed or built.  42 U.S.C. § 3604(f)(1), (2).  Owners of multifamily

housing which was not built in compliance with current standards must allow tenants to

make reasonable modifications to the housing or common areas, at the tenants own

expense, to accommodate a disability.  Owners themselves must make reasonable

1

accommodations in rules or policies in order to afford the disabled an equal opportunity to use and enjoy the premises. 42 U.S.C. § 3604(f)(3)(A), (B). The Plaintiffs in this lawsuit allege that the Defendants have failed to live up to these and other obligations imposed by the FHA.

The Plaintiffs in this lawsuit are the National Fair Housing Alliance ("NFHA"), a national non-profit public service organization of allied local private and non-profit fair housing groups which are dedicated to assuring accessible housing and promoting residential integration, and two of its member organizations, Savannah-Chatham County Fair Housing Council, Inc. and Metro Fair Housing Services, Inc. Their Amended Complaint alleges violations of the FHA against over forty Defendants. Plaintiffs categorize the Defendants as either: (1) designer/builders of multi-family housing ("design/build Defendants"), (2) owners of multi-family housing properties designed and built by the design/build Defendants which, through direct "testing," have been determined to be out of compliance with the FHA ("owner Defendants"), and (3) owners of properties built by the design/builder Defendants whose properties have not been directly tested but are believed to be out of compliance with the FHA as well ("remedial Defendants").

The five design/build Defendants include an individual, Steven Bodner, two Indiana construction companies which he operates or did operate, and two other housing related companies in which Bodner holds an ownership interest. The owner Defendants

and remedial Defendants have multi-family housing properties located in nine different states which were designed or built by one of Bodner's companies. It is alleged that Bodner owns an interest in several of these Defendants as well.

Plaintiffs contend that the design/build Defendants engaged in a "pervasive pattern and practice of designing and constructing apartments in violation of the FHA's accessibility requirements." More specifically, Plaintiffs contend these Defendants designed and built apartment communities post-1990 that did not comply with the United States Department of Housing and Urban Development's published Fair Housing Accessibility Guidelines. According to Plaintiffs, the owner Defendants are aware of the fact that these apartment communities were designed and built in a manner which does not allow disabled individuals to readily use or enjoy the units or the common areas, have done nothing about such noncompliance and have willingly engaged in discrimination by continuing to rent the apartments without rectifying the lack of FHA compliance. The Amended Complaint asks the court to declare the Defendants in violation of the FHA, enjoin further discriminatory conduct, require the design/build Defendants to survey and bring into compliance the affected properties and award damages and attorney fees.

Ten of the Defendants, including all of the design/build Defendants, have entered into stipulated judgments with the Plaintiffs to settle the claims with respect to certain of the owned properties. The stipulated judgments require Bodner and his related construction companies to retrofit certain design and construction elements in order to

make the properties more accessible to the disabled.  Other property owners have not

agreed to such stipulated judgments.  Three groups of owner Defendants and remedial

Defendants have brought separate, but nearly identical motions seeking to be dismissed

from the lawsuit pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure.  Those

motions are the subject of this entry.

## I.      STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must first comply with

Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader

is entitled to relief," such that the defendant is given fair notice of the nature of the claim

and the grounds upon which it rests.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555,

127 S.Ct. 1955, (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99 (1957)).

Second, the factual allegations in the complaint must be sufficient to raise the possibility

of relief above the "speculative level," assuming that all of the allegations in the

complaint are true.  *E.E.O. C. v. Concentra Health Servs., Inc*., 496 F.3d 773, 776 (7th

Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  "Detailed factual allegations" are not

required, but the plaintiff must allege facts that, "state a claim to relief that is plausible on

its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, (2009) (quoting

*Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Iqbal*, 129 S.Ct. at 1949. "[O]nce a claim has been

stated adequately, it may be supported by showing any set of facts consistent with the

allegations in the complaint." *Twombly*, 550 U.S. at 563.

## II.    42 U.S.C. § 3604(f)

The particular provision of the Fair Housing Act Amendments at issue in this case

is set forth below:

> **42 U.S.C. § 3604 -** As made applicable by section 3603 of this title and
> except as exempted by sections 3603(b) and 3607 of this title, it shall be
> unlawful–
> ...
> (f)(1) To discriminate in the sale or rental, or to otherwise make unavailable
> or deny, a dwelling to any buyer or renter because of a handicap of--
> > (A) that buyer or renter,
> > (B) a person residing in or intending to reside in that dwelling after it
> > is so sold, rented, or made available; or
> > (C) any person associated with that buyer or renter.
> (2) To discriminate against any person in the terms, conditions, or
> privileges of sale or rental of a dwelling, or in the provision of services or
> facilities in connection with such dwelling, because of a handicap of--
> > (A) that person; or
> > (B) a person residing in or intending to reside in that dwelling after it
> > is so sold, rented, or made available; or
> > (C) any person associated with that person.
> (3) For purposes of this subsection, discrimination includes--
> > (A) a refusal to permit, at the expense of the handicapped person,
> > reasonable modifications of existing premises occupied or to be
> > occupied by such person if such modifications may be necessary to
> > afford such person full enjoyment of the premises except that, in the
> > case of a rental, the landlord may where it is reasonable to do so
> > condition permission for a modification on the renter agreeing to
> > restore the interior of the premises to the condition that existed
> > before the modification, reasonable wear and tear excepted.
> > (B) a refusal to make reasonable accommodations in rules, policies,
> > practices, or services, when such accommodations may be necessary
> > to afford such person equal opportunity to use and enjoy a dwelling;

or

(C) in connection with the design and construction of covered
multifamily dwellings for first occupancy after the date that is 30
months after September 13, 1988, a failure to design and construct
those dwellings in such a manner that–

> (i) the public use and common use portions of such dwellings
> are readily accessible to and usable by handicapped persons;
> (ii) all the doors designed to allow passage into and within all
> premises within such dwellings are sufficiently wide to allow
> passage by handicapped persons in wheelchairs; and
> (iii) all premises within such dwellings contain the following
> features of adaptive design:

>> (I) an accessible route into and through the dwelling;
>> (II) light switches, electrical outlets, thermostats, and
>> other environmental controls in accessible locations;
>> (III) reinforcements in bathroom walls to allow later
>> installation of grab bars; and
>> (IV) usable kitchens and bathrooms such that an
>> individual in a wheelchair can maneuver about the
>> space.

## III.     DISCUSSION

At the heart of the Defendants' argument is the issue of whether an owner of

apartments can be found liable under 42 U.S.C. § 3604(f)(1) or (f)(2) for merely offering

to rent apartments that were designed and built out of compliance with the disability

access standards that multi-family units have been required to meet if constructed after

1990.  Defendants assert that there needs to be an instance of discrimination involving a

particular individual or family in order for them to be held liable and that a claim based

upon mere "observation" of alleged discriminatory conditions on an owner's property has

only been recognized by the Ninth Circuit and would not be consistent with the rulings in

cases coming from the Seventh Circuit Court of Appeals.

In response to the Defendants' argument that Plaintiffs have failed to point to a single instance where they refused to rent, made unavailable or denied a unit to a disabled individual, the Plaintiffs refer the court to both organizational standing cases, *e.g., Village of Bellwood v. Dwivedi,* 895 F.2d 1521, 1526 (7th Cir. 1990), and the history of "testing" or "tester[1]" cases brought to enforce the FHA, *e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114 (1982), where an individual may have no intention of renting or buying a unit but still sustain an injury in the form of discrimination. In reply, the Defendants were quick to state that they were not challenging the standing of the Plaintiffs, but were contending that there has to be "an affirmative act of discrimination" and not simply an observation of a condition which demonstrates a lack of design/build compliance. In short, Defendants argue that if Plaintiffs' testing at their properties did not yield an affirmative act of discrimination it should not be allowed to form the basis for a claim under subsections 3604(f)(1) or (f)(2).

As Defendants admit, at least two jurisdictions have found that a claim under subsections 3604(f)(1) or (f)(2) can be supported by "testing." Most recently, in a case where the issues were nearly identical to those in the case at bar, the Middle District of

---

[1]"Testers" in this context are individuals who have no intention of renting an apartment, but act in the same manner as a potential renter in order to gather evidence of unlawful practices.

Florida denied a motion to dismiss which was based upon the same arguments raised by

Defendants in this case.  In doing so it stated:

> ... given the absence of any caselaw discussing the viability of this claim
> and legislative history suggesting that Plaintiff's allegations plausibly state
> a claim for relief under 42 U.S.C. § 3604(f)(1)-(2), the Court finds that
> Plaintiff's claim against BHDR is well-pled.

*Harding v. Orlando Apartments, LLC,* 2011 WL 1457164, at * ( M.D.Fla. April 15,

2011).  The legislative history referred to by the court in *Harding* includes comments

from the House and Senate Committee debates to the effect that it was understood that

discrimination against handicapped individuals was not limited to blatant intentional acts,

but can be as simple as benign neglect with respect to architectural barriers which result

in physical exclusion of those with certain disabilities.  *Id.* at *6.

        The Ninth Circuit has also accepted what Defendants describe as a claim based on

"observational discrimination."  In *Smith v. Pacific Properties and Development Corp.,*

358 F.3d 1097 (9th Cir. 2004), *cert. denied,* 543 U.S. 869, 125 S.Ct. 106 (2004),  the

Court noted that as a matter of first impression it was deciding that a person seeking to

enforce rights created by § 3604(f)(2) need not have an interest in actually purchasing or

renting a particular property.  *Id*. at 1099.  Reversing the district court's determination

that without an interest in renting or purchasing a unit, neither the tester nor the co-

plaintiff housing organization could bring a claim, the court stated:

> To read an additional standing requirement into the statute beyond mere
> observation, however, ignores that many overtly discriminatory conditions,
> for example, lack of a ramped entryway, prohibit a disabled individual from

8

forming the requisite intent or actual interest in renting or buying for the
very reason that architectural barriers prevent them from viewing the whole
property in the first instance.

*Id* at 1104.

Defendants argue that these cases are outliers and would be inconsistent with the

Seventh Circuit's construction of the FHA.  Yet they have not been able to point to a

decision from the Seventh Circuit, or any other circuit for that matter, where "testing" has

been specifically rejected as a basis for a discrimination claim brought against an owner.

Moreover, certiorari was sought with regard to the *Smith* decision and the same was

denied.  *Smith v. Pacific Properties and Development Corp.*, 358 F.3d 1097 (9th Cir.

2004), *cert. denied,* 543 U.S. 869, 125 S.Ct. 106 (2004).

The question at hand is whether an owner who knows or should know the building

he owns was constructed in violation of subsection (f)(3)(C) is required to address those

violations, or can he offer the apartments for rent without making an effort to correct the

violations.  And, the court sees the answer to that question as being tied to the extent of

the owner's knowledge of those violations, which might reflect on intent.  Affording the

Plaintiffs all factual inferences, as the court must at the motion to dismiss stage, it is

certainly plausible that an owner could have purchased a post-1990 constructed apartment

community knowing that its price reflected a lesser cost of construction due to non-

compliance with subsection (f)(3)(C).  Further, that owner could intend that the costs of

compliance be passed on to those renters who may need certain modifications that

otherwise would have been in place if subsection (f)(3)(C) had been complied with.  It is not implausible to think that an owner might use subsection (f)(3)(A), which requires an owner to allow a renter to make reasonable modifications at their cost, as a shield and a means to shift the costs of subsection (f)(3)(C) compliance.

This court understands the Fair Housing Act to be a broad and inclusive anti-discrimination mandate from Congress, and the Supreme Court has stated on several occasions that it must be given a generous construction.  *City of Edmunds v. Oxford House, Inc.,* 514 U.S. 725, 731, 115 S.Ct. 1776, 1780 (1995); *Havens Realty Corp v. Coleman,* 455 U.S. 363, 380, 102 S.Ct. 1114, 1125 (1982); *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 212, 93 S.Ct. 364, 368 (1972).  Accordingly, the court will not read into the Act a requirement of an "affirmative act," when the same is unnecessary for the owners to have a discriminatory intent.  The court finds that the allegations contained in Plaintiffs' Amended Complaint are sufficient at this point to lay out a plausible claim of discrimination.

As for the remedial Defendants, the court agrees with the Plaintiffs, that the presence of those Defendants in the lawsuit is required if complete relief is to be provided.  Should the claims against the design/build Defendants be successful with regard to the properties owned by the remedial Defendants and a retrofit of the various premises is ordered as part of any relief granted there would be a need to address the interests of the owners of those properties.  Even if there are no specific discrimination

10

claims made against the remedial defendants and no "testing" was done at their properties, it is plausible that the same defects being addressed by the design-build Defendants would exist and need to be corrected at the properties owned by the remedial Defendants, if it is shown that those apartment communities were designed and built in a manner inconsistent with FHA requirements.  Since they own the properties, the remedial Defendants have a vital interest in the order that makes them a required party under Rule 19(a) of the Federal Rules of Civil Procedure.

## IV.    CONCLUSION

For the reasons explicated in this entry, the Motion To Dismiss filed by Defendants Brooklyn Place TIC I, LLC Through Brooklyn Place TIC XXIX, LLC (Docket # 103), Defendant Cross Lake Apartments, LLC's Motion To Dismiss Plaintiffs' Amended Complaint (Docket # 107) and Defendants Morgan Overlook Apartments LLC, Morgan Crescent At Wolfchase, LLC and Huntsville Main Street Apartments LLC's Motion To Dismiss Plaintiffs' Amended Complaint (Docket # 110) are each **DENIED**.

**SO ORDERED** this 17th day of February 2012.

RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

11

Electronic Copies to:

Michael  Allen
RELMAN DANE & COLFAX, PLLC
mallen@relmanlaw.com

Stephanie Lynn Cassman
LEWIS WAGNER LLP
scassman@lewiswagner.com

Stephen M. Dane
RELMAN DANE & COLFAX, PLLC
sdane@relmanlaw.com

John William Emry Jr
johnemrylaw@att.net

Andrew W. Gruber
BINGHAM GREENEBAUM DOLL LLP
agruber@bgdlegal.com

David K. Herzog
FAEGRE BAKER DANIELS LLP - Indianapolis
david.herzog@faegrebd.com

John J. Jewell
TRIMBLE & JEWELL PC
jewell@evansville.net

Thomas J. Keary
RELMAN DANE & COLFAX, PLLC
tkeary@relmanlaw.com

Lori R. Koch
GOFFSTEIN RASKAS POMERANTZ KRAUS & SHERMAN, LLC
lkoch@grlawstl.com

Harmony A. Mappes
FAEGRE BAKER DANIELS LLP - Indianapolis
harmony.mappes@faegrebd.com

Christopher D. Oakes
COX, OAKES & ASSOCIATES, LTD.
cdoakes@coxattorneys.com

Theresa Renee Parish
LEWIS WAGNER LLP
tparish@lewiswagner.com

Charles F.G. Parkinson
HARRIS WELSH & LUKMANN
cparkinson@hwllaw.com

John Carl Trimble
LEWIS WAGNER LLP
jtrimble@lewiswagner.com

Paul A. Wolfla
BAKER & DANIELS - Indianapolis
paul.wolfla@bakerd.com