**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| National Fair Housing Alliance, Inc. *et al.,* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:10-CV-0993-RLY-DML |
| ) | |
| S.C. Bodner Company, Inc.., *et al.,* ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**STIPULATED JUDGMENT**

This Stipulated Judgment is entered into this 12th day of October 2012 by and between

Plaintiffs National Fair Housing Alliance, Inc. ("NFHA"), Savannah-Chatham County Fair

Housing Council, Inc., and Metro Fair Housing Services, Inc. (collectively "Plaintiffs") and

Defendants Brooklyn Place TIC I, LLC through Brooklyn Place TIC XXIX, LLC (collectively

"Brooklyn Defendants").

## I.  PURPOSES OF THE STIPULATED JUDGMENT

WHEREAS Defendants Brooklyn Place TIC I, LLC through Brooklyn Place TIC XXIX,

LLC are 29 limited liability companies that own Brooklyn Place Apartments at 6830 Brooklyn

Court, Evansville, Indiana 47715;

WHEREAS, on May 10, 2011, Plaintiffs filed an Amended Complaint against the

Brooklyn Defendants  and others in the United States District Court for the Southern District of

Indiana, case number 1:10-cv-00993-RLY-DML, alleging that, as more fully set forth in

Plaintiffs' Amended Complaint, the Brooklyn Defendants, knowingly or with sufficient time to

discover and correct these deficits,  rented units at Brooklyn Place Apartments which were not

readily accessible to and usable by persons with disabilities, in violation of the Fair Housing Act (FHA);

WHEREAS the Brooklyn Defendants and Plaintiffs have engaged in discussions to resolve the allegations set forth in the Amended Complaint regarding access and environments for residents and visitors at Brooklyn Place Apartments; and, thereafter, the Parties have worked closely together to create a method to accomplish such a resolution and enhance accessibility and livability for disabled persons in the future and which will avoid future claims by NFHA affiliate members and others concerning the subject matter of the Complaint;

WHEREAS the Parties, without liability, have concluded that it serves their respective interests to resolve the litigation and to avoid the expenditure of additional time, effort and resources in litigating disputes as to the subject apartment complexes; and they now wish to fully, finally, and forever settle and compromise the claims and defenses that each has in this action regarding these properties and to release, discharge, and terminate all claims, demands, controversies, suits, causes of action, damages, rights, warranties, liabilities and obligations between them relating to this property as described herein; and

WHEREAS the Parties have entered into a Performance Protocol outlining the methods by which the retrofits will be completed and reviewed and intend that each and every term of the Performance Protocol be incorporated herein by this reference.

## II. TERMS OF THE STIPULATED JUDGMENT

Based upon the foregoing recitals, which are incorporated herein by this reference, it is hereby ORDERED, ADJUDGED AND DECREED as a Final Judgment that:

A.    Settlement Payment

The Brooklyn Defendants shall, no later than sixty (60) days from the entry of this

2

Stipulated Judgment by the Court but no later than December 30, 2012, make a Settlement

Payment, pursuant to the Performance Protocol, as compensation to Plaintiffs (including

reimbursement of attorney's fees).  No portion of the Settlement Payment is intended for, or will

be utilized by, the Brooklyn Defendants to make any building or property more accessible or

accommodating to any disabled person.

      B.      <u>Retrofitting of Design and Construction Elements</u>

      1.  The Brooklyn Defendants shall make the accessibility-related changes on the

Appendix A.

      2.  All retrofits to the building entrances, accessible routes and the public and

common use areas on Appendix A shall commence as soon as reasonably possible after

date of the entry of this Stipulated Judgment by the Court and shall be completed not

more than twelve (12) months from same, unless the Parties agree otherwise in writing.

      3.  Unless a tenant has requested expedited retrofitting, pursuant to Paragraphs

B.4 and B.5 below, retrofits to the interiors of "covered multifamily dwellings," as that

term is defined by 24 C.F.R. § 100.201, shall commence when the unit first becomes

vacant following date of the entry of this Stipulated Judgment by the Court and shall be

completed before the unit is re-occupied by a new tenant.  Regardless of whether or not a

vacancy arises, however, the Brooklyn Defendants shall perform these retrofits within

twenty four (24) months from the end of the month in which the Court enters this

Stipulated Judgment, unless the Parties agree otherwise in writing. The Brooklyn

Defendants shall attempt, in good faith, to minimize any inconvenience to the residents.

      4.  A resident or prospective resident of a "covered multifamily dwelling," as that

term is defined by 24 C.F.R. § 100.201, may request in writing that retrofits to their units

in Appendix A be performed on an expedited basis.  In such instance, the Brooklyn

Defendants shall commence and finish the Punch List retrofits as soon thereafter as is

practical but not later than sixty (60) days following receipt of the request or as otherwise

allowed by HUD.  The Brooklyn Defendants shall pay all expenses associated with these

retrofits and shall attempt, in good faith, to minimize any inconvenience to the residents.

     5.   Within thirty (30) days from the date of the entry of this Stipulated Judgment

by the Court, the Brooklyn Defendants shall provide a notice to the residents of each

ground floor dwelling of their respective property informing the residents of the

availability of interior retrofits under the terms of this Stipulated Judgment, and

informing the resident that this work shall be completed without cost to them.  The notice

shall also include a proposed schedule for such work.  Should any resident request any

interior retrofit on Appendix A to his or her unit, the Brooklyn Defendants agree that

within thirty (30) days of the receipt of the tenant's written request or by a later date if

specifically requested by the tenant or agreed to by the Parties, the Brooklyn Defendants

will commence the requested retrofits for their property relating to the interior of the unit

and complete the same as soon as reasonably practical thereafter.  The expenses

associated with the retrofits shall be borne by the Brooklyn Defendants.

     6.     Performance by the Brooklyn Defendants of their obligations as outlined

in the Paragraphs B.1 through B.5 above shall constitute compliance with the terms of

this Stipulated Judgment.

     7.     The sale or transfer, in whole or in part, of an ownership interest in a

Brooklyn Place Apartments prior to the completion of retrofits in Appendix A shall not

affect the Brooklyn Defendants' obligation to complete the retrofit work provided for

under this Stipulated Judgment.  In the event of such sale or transfer of interest, the
Brooklyn Defendants will provide written notice to each buyer or transferee that they are
required to complete the retrofits pursuant to this Stipulated Judgment.  The Brooklyn
Defendants shall either complete the retrofit work prior to the sale or transfer or obtain
written consent of the new buyer(s)/transferee(s) to have the retrofits performed within
the time frame allotted herein after the new owner takes possession.  Not later than
fourteen (14) days after such sale or transfer, the Brooklyn Defendants shall notify
Plaintiffs in writing of actions that they have taken in accord with this provision.  Upon
such sale, the Brooklyn Defendants shall be fully dismissed, released and discharged
from the obligations of this Stipulated Judgment, provided either that the retrofit work
has been completed and certified prior to the date of sale, or the new owner has assumed
and agreed to complete such work in accordance with the Stipulated Judgment.

C.	General Release of All Claims

For valuable consideration, the sufficiency and receipt of which is hereby acknowledged,
Plaintiffs hereby release the Brooklyn Defendants and their respective past and present partners,
officers and directors, their employees, agents, attorneys, accountants, advisors, consultants,
subsidiaries, affiliated and parent entities and corporations, and each of their respective insurers,
predecessors, successors and assigns (collectively, their "Affiliates"), of and from any and all
claims, demands, debts, causes of actions, complaints, obligations, suits, liabilities, rights,
commitments, judgments, suits at law or in equity, and obligations whatsoever, whether known
or unknown, concealed, hidden, suspected or unsuspected, that they ever had or may now have,
arising out of, or in any way related to, the facts and circumstances surrounding and alleged (or
which could have been alleged) in the Amended Complaint regarding the subject apartment

5

complexes, including, but not limited to, claims related to the Fair Housing Act (Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, and any and all amendments thereto), the Americans with Disabilities Act, and any similar federal, state or local accessibility laws.

Plaintiffs, on behalf of themselves and their respective predecessors, successors, assigns, agents, directors and officers expressly covenant and agree to forever refrain from instituting, maintaining, prosecuting, continuing to maintain or prosecute any suit, action, administrative action or proceeding, or assisting others with any suit, action, administrative action, or proceeding involving the subject apartment complexes, subject to the terms and provisions set forth herein with regard to remedial actions.  Plaintiffs agree that this Stipulated Judgment shall extinguish, and amount to a complete and final disposition and settlement of all claims Plaintiffs may have against the Brooklyn Defendants relating to all matters and issues involving Brooklyn Place Apartments which were alleged or could have been alleged in the Amended Complaint, or were raised or could have been raised in the Amended Complaint, including, but not limited to, any claims relating to the Fair Housing Act, the Americans with Disabilities Act, and any federal, state or local laws related thereto.  It is understood and agreed that the remedial work is yet to be performed in accordance with the terms and provisions hereof, and that the Court retains jurisdiction to enforce the same.

Plaintiffs' counsel shall move to dismiss with prejudice and without costs (other than as agreed to and set forth in the Performance Protocol), all claims in the Amended Complaint with respect to Brooklyn Place Apartments and the owners of the same.  However, the Parties covenant and agree that the District Court shall retain jurisdiction over this matter to enforce the terms of this Stipulated Judgment.

Plaintiff NFHA shall take all reasonable steps to secure the cooperation of its members to honor this Stipulated Judgment and to abide by NFHA's decision to enter into this Stipulated Judgment.  The Parties seek to avoid future litigation with respect to Brooklyn Place Apartments, which concerns the subject matter of Plaintiffs' Amended Complaint, and to bring any such future claim by a member to NFHA's attention for purposes of a mediated resolution with the Brooklyn Defendants.

       D.    <u>Remedial Obligations</u>

       1.    *General Provisions.* Subject to the terms of this Stipulated Judgment, the Brooklyn Defendants shall not discriminate in the rental of, or otherwise make unavailable or deny dwellings to people because of their disabilities in violation of the FHA, 42 U.S.C. § 3604(f)(1), or  discriminate against people with disabilities in the terms, conditions, or privileges of rental of a dwelling in violation of the FHA, 42 U.S.C. § 3604(f)(2).

       2.    *Notice to Public:*

       a.    Within ten (10) days of the date of execution of this Stipulated Judgment, and for a period of thirty-six (36) months thereafter, the Brooklyn Defendants agree to post and prominently display in the sales or rental offices of all covered multifamily dwellings owned in whole or in part or managed by them a sign no smaller than 10 by 14 inches indicating that all dwellings are available for rental on a nondiscriminatory basis.  A poster that comports with 24 C.F.R. § 110 will satisfy this requirement.

       b.    For a period of thirty-six months (36) from the execution of this Stipulated Judgment, the Brooklyn Defendants shall, in all advertising in

newspapers, websites, or reprints of pamphlets, brochures and other promotional

literature regarding any covered multifamily rental property owned in whole or in

part or managed by them, place, in a conspicuous location, the universal symbol

of accessibility.

E.      Findings

The Court makes the following findings:

1.      The Parties have freely, voluntarily, and without coercion agreed to the

entry of this Stipulated Judgment.

2.      The Court has personal jurisdiction over Plaintiffs and the Brooklyn

Defendants for purposes of this Action and has jurisdiction over the subject matter of this

Action.

3.      The provisions of this Stipulated Judgment shall be binding upon Plaintiffs

and the Brooklyn Defendants.

4.      This Stipulated Judgment shall be deemed as having adjudicated, once and

for all, the merits of each and every claim, matter and issue that was alleged or could

have been alleged in the Amended Complaint as to the Brooklyn Defendants.

Accordingly, *res judicata* and collateral estoppel shall apply to each and every such

claim, matter and issue so that the Plaintiffs are forever barred from litigating such

claims, matters and issues.

5.      Entry of this Stipulated Judgment is in the public interest.

6.      This Stipulated Judgment is for settlement purposes only and does not

constitute an admission by the Brooklyn Defendants of any allegations contained in the

Amended Complaint.

7. Plaintiffs are acting as private attorneys general in maintaining this action and enforcing the provisions of the Fair Housing Act and Americans with Disabilities Act against the Brooklyn Defendants.

8. Therefore, the Court finds that any further legal or administrative action of any kind except for the enforcement of this Stipulated Judgment, instituted by any individual or entity arising from, based upon, or connected with the alleged failure of the Brooklyn Defendants in compliance with the provisions of the Fair Housing Act in the ownership and rental of the subject apartment complexes, would be moot.

F.   <u>Miscellaneous Provisions</u>

1. *Binding Effect.*  This Stipulated Judgment shall be binding upon and inure to the benefit of the Parties hereto, their respective heirs, successors and assigns.

2. *Costs and Expenses*.  Except as specifically provided for herein, each of the Parties to this Stipulated Judgment shall bear its own costs arising out of and/or relating to the Amended Complaint.

3. *Deadlines*.  All deadlines and dates for performance by Plaintiffs and/or the Brooklyn Defendants under this Stipulated Judgment may be extended or modified by written agreement between NFHA and the Brooklyn Defendants.

4. *Authority to Contract*.  The Parties hereby mutually acknowledge, represent and warrant that the persons executing this document on their behalf are vested with complete and legal authority to execute agreements, and specifically, the instant Stipulated Judgment on their behalf.

5. *Severability.*  Each provision and term of this Stipulated Judgment shall be interpreted in such a manner as to be valid and enforceable.  In the event any provision

9

or term of this Stipulated Judgment is determined to be, or is rendered, invalid or

unenforceable, all other provisions or terms of this Stipulated Judgment shall remain

unaffected to the extent permitted by law.

      6.    *Notice to the Parties.*  All notices required or permitted hereunder shall be

in writing and shall be served on the Parties at the addresses or e-mail addresses set forth

below.  If sent by overnight delivery, notice shall be deemed delivered one (1) business

day after deposit with a nationally recognized overnight courier.  Personal delivery shall

be deemed delivered upon the date the same was actually delivered.  E-mail notices shall

be deemed delivered the day the same was sent, provided that the sender has retained a

copy and the same was properly sent.

    a.  Notices to Plaintiffs shall be sent to:

> National Fair Housing Alliance
> Attn: Shanna Smith, CEO and President
> 1101 Vermont Ave., NW, Suite 710
> Washington, DC 20005
> ssmith@nationalfairhousing.org

> Any notice to Plaintiffs must also be sent to counsel for Plaintiffs:

> Michael Allen, Esq.
> Relman, Dane & Colfax PLLC
> 1225 19th St., NW, Suite 600
> Washington, DC 20036
> mallen@relmanlaw.com

    b.  Notices to the Brooklyn Defendants shall be sent to:

> Andrew W. Gruber
> Bingham Greenebaum Doll LLP
> 2700 Market Tower
> 10 West Market Street
> Indianapolis, IN 46204

      7.  *Entire Agreement.*  This Stipulated Judgment constitutes the entire agreement

between the Parties with respect to the subject matter hereof and supersedes all prior

agreements, understandings, expectations and discussions of or between the Parties, whether oral or written, and there are no representations or other agreements between the Parties respecting the subject matter hereof.

### III. ENTRY OF JUDGMENT.

SO ORDERED this _____day of _____, 2012

.

_____
UNITED STATES DISTRICT COURT JUDGE

Stipulated to by the Parties as indicated by the signatures appearing below:

**Plaintiff National Fair Housing Alliance, Inc.**

By: _____ October 9, 2012
Name: _____
Its: _____

**Plaintiff Savannah-Chatham County Fair Housing Council, Inc.**

By: _____ October 10, 2012
Name:  David Wayne Dawson, Jr.
Its:  Executive Director

**Plaintiff Metro Fair Housing Services, Inc.**

By: _____ October 11, 2012
Name: Gail L. Williams
Its: Executive Director

**Defendants Brooklyn Place TIC I, LLC through Brooklyn Place TIC XXIX, LLC**

By: _____ October ___, 2012
Name: _____
Its: _____

Stipulated to by the Parties as indicated by the signatures appearing below:

**Plaintiff National Fair Housing Alliance, Inc.**

By:_____   October ___, 2012
Name: _____
Its: _____

**Plaintiff Savannah-Chatham County Fair Housing Council, Inc.**

By:_____   October ___, 2012
Name: _____
Its: _____

**Plaintiff Metro Fair Housing Services, Inc.**

By:_____   October ___, 2012
Name: _____
Its: _____

**Defendants Brooklyn Place TIC I, LLC through Brooklyn Place TIC XXIX, LLC**

By:_____   October 9, 2012
Name: James T. Wilkinson, President of Wilkinson 1031, LLC, manager of Brooklyn Place
Its:   Asset and Property Management, LLC, agent for Brooklyn Place TIC I, LLC through
        Brooklyn Place TIC XXIX, LLC

Respectfully Submitted,


/s/ Michael G. Allen
Michael G. Allen
Stephen M. Dane
Thomas J. Keary
*Admitted pro hac vice*
Relman & Dane, PLLC
1225 19th Street, NW, Suite 600
Washington DC 20036
Telephone:  (202) 728-1888
Fax:  (202) 728-0848
mallen@relmanlaw.com
sdane@relmanlaw.com
tkeary@relmanlaw.com

John Emry (Indiana Bar No. 8360-49)
JOHN EMRY LAW
62 W. Jefferson Street
Franklin, IN 46131
Telephone:  (317) 736-5800
Fax:  (317) 736-6070
johnemrylaw@att.net

*Attorneys for Plaintiffs*

Dated:  October 12, 2012



/s/ Andrew W. Gruber
Andrew W. Gruber
Bingham Greenebaum Doll LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN 46204
(317)968-5381
Fax: (317)236-9907
Email: agruber@binghammchale.com

*Attorney for the Brooklyn Defendants*

Dated:  October 12, 2012

13

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2012, a copy of the foregoing Stipulated Judgment was electronically filed with the Clerk of the Court using the CM/ECF system and will be electronically sent to all parties of record by the Court's electronic filing system.

**David K. Herzog**
**Harmony A. Mappes**
**Paul A. Wolfla**
BAKER & DANIELS - Indianapolis
300 N. Meridian
Suite 2700
Indianapolis, IN 46204
(317) 237-1240
Email: david.herzog@bakerd.com
       harmony.mappes@bakerd.com
       paul.wolfla@bakerd.com

**John Carl Trimble**
**Stephanie Lynn Cassman**
**Theresa Renee Parish**
LEWIS WAGNER LLP
501 Indiana Avenue
Suite 200
Indianapolis, IN 46202
(317) 237-0500
Fax: (317) 630-2790
Email: jtrimble@lewiswagner.com
       scassman@lewiswagner.com
       tparish@lewiswagner.com

**Charles F.G. Parkinson**
HARRIS WELSH & LUKMANN
107 Broadway
Chesterton, IN 46304
(219) 926-2114
Fax: (219) 926-1503
Email: cparkinson@hwllaw.com

**Lori R. Koch**
GOFFSTEIN RASKAS POMERANTZ
KRAUS & SHERMAN, LLC
7701 Clayton Road
St. Louis, MO 63117-1371
Email:  lkoch@grlawstl.com

**Andrew W. Gruber**
BINGHAM MCHALE LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN 46204
(317) 968-5381
(317) 968-5491
Fax: (317)236-9907
Email: agruber@binghammchale.com

**John J. Jewell**
TRIMBLE & JEWELL PC
P O Box 1107
706 Court Street
Evansville, IN 47706-1107
(812) 421-2979
Fax: (812) 421-2978
Email: jewell@evansville.net

**Christopher D. Oakes**
COX, OAKES & ASSOCIATES, LTD.
1051 Perimeter Drive
Suite 550
Schaumburg, IL 60173
(847) 240-0022
Email: cdoakes@coxattorneys.com

**John William Emry, Jr.**
62 West Jefferson Street
Franklin, IN 46131-2311
(317)736-5800
Fax: (317)736-6070
Email: johnemrylaw@att.net

I further certify that I have mailed a copy of the foregoing document via the U.S. Postal Service to the following non-CM/ECF participants: None.

                         /s/ Michael G. Allen
                         Michael G. Allen*
                         Stephen M. Dane*
                         Thomas J. Keary*
                         RELMAN, DANE & COLFAX, PLLC
                         1225 19th Street, N.W., Suite 600
                         Washington, D.C. 20036
                         Tel: 202-728-1888
                         Fax: 202-728-0848
                         mallen@relmanlaw.com
                         sdane@relmanlaw.com
                         tkeary@relmanlaw.com

                         *Attorneys for Plaintiffs*

                         *\* Admitted pro hac vice*

APPENDIX A

| FHAA Requirement | Brooklyn Capital Need Assessment | NFHA Test Report Observation |
|---|---|---|
| Requirement 1: Accessible building entrance on an accessible route | curb cuts do not feature access aisles. In order to comply with ADAAG and FHA, installation of access aisles at the curb cuts is recommended to allow an access route to the concrete sidewalk surface from the asphalt driveway (Critical Repair). | Accessible routes can be blocked by parked automobiles throughout the site. HC parking spaces and other parking spaces throughout site are at the base of the curb cuts such that a car parked in the space will block the accessible route |
| | | There are no wheel stops and the sidewalks are immediately adjacent to the parking. It is likely that the overhang of some cars when parked in the parking space will reduce the width of the sidewalk to less than 36" wide. |
| Requirement 2: Accessible and Usable Public and Common Use Areas | | Latch at pool at approximately 60" AFF. Beyond reach range for forward (48" AFF) or side (54" AFF) approach. |
| | | Not accessible route to the equipment inside the exercise room due to placement of machines |
| HC parking | markings, vertical signage, and compliant access aisles. Therefore, installation of four (4) additional standard handicap parking spaces is required. Designated handicapped parking spaces require pavement markings, access aisles (60-inch wide for standard handicapped spaces and 96-inch wide for van accessible) at the curb access, and vertical signage at each location. It should be noted that | |
| | | HC parking spaces lack access aisles. |
| | 22. The property does not feature a handicapped accessible garage parking space. According to the Fair Housing Act (FHA) at least one (1) of each type of provided parking is required to be handicapped accessible. Reconfiguring an existing garage space is required in order to comply with the FHA. The accessible garage parking space should feature a minimum 10' wide door, a minimum 16' wide space (18' wide is preferred as the recommended width for a van) and a minimum 98" of vertical clearance. (▇▇▇▇▇▇▇▇▇) | |
| Cubhouse kitchen | route and with accessible features. However, the community kitchen sink in the clubhouse building does not feature a roll under forward approach. The removal of the base cabinetry to provide a roll under forward approach and installation of scald and abrasion protection at the exposed sink pipes is required in order to comply with the FHA (Non-Critical Repair). | |
| | 27. The clubhouse common area kitchen was observed with a rear control range. In order to comply with FHA, the range is required to feature front controls.▇▇▇ ▇▇▇▇▇▇▇▇▇ | |
| Clubhouse bathrooms | 6. The clubhouse men's and women's public restroom / shower room was observed with exposed sink pipes. In order to comply with ADAAG, the installation of scald and abrasion protection at the sink pipes is required. (▇▇▇▇▇▇▇▇) | Men's Room: drain pipes under the lavatory are not insulated or otherwise protected |
| | 7. The handicapped designated toilet stalls at the men's and women's public restroom were observed with a 29-inch wide clear opening. In order to comply with ADAAG, the clear door opening shall be a minimum 32-inches wide. In addition, | |

APPENDIX A

| | | |
|---|---|---|
| | the handicapped designated toilet stalls were observed without a compliant 30"x48" of clear floor space at the toilet fixtures. In order to comply with ADAAG, reconfiguration of the stalls is required to allow compliant clear floor space at the toilet fixture outside of the door swing. ~~(2.5" @ 01/02/03)~~ | |
| | | Men's room toilet stall: Should be 69" deep for floor mounted WC.  Only 56 ½" was provided. |
| | 8. The shower stall at the men's and women's public restrooms will require the following repairs to comply with ADAAG and the American National Standards Institute (ANSI): reconfiguration of the stall to allow a minimum 36"x36" of clear floor space (currently 29"x32"), reconfiguration of the entry side of the stall to be a minimum 36-inches wide (currently 27.5-inches wide), installation of a shower seat, relocation of the shower head to the opposite side of the stall to allow 1-foot of clear floor space beyond the shower wall on which the seat is mounted, installation of grab bars at the control wall and the back wall, and installation of a 59-inch shower hose. ~~(...)~~ | |
| | | Men's room paper towel dispenser is at approximately 60" AFF.  Beyond reach range for forward (48" AFF) or side (54" AFF) approach |
| **Requirement 3: Usable doors** | threshold and at least 32-inch wide doors. However, the entry doors to the ground floor dwelling units were observed with knob style hardware at the exterior side of the doorway.  Installation of levered handle hardware is required in order to comply with FHA.  It should be noted | |
| | addition, the following apartment building main entry doors were observed with knob hardware, and therefore will require the installation of levered hardware: 616 (2), 626 (3), 640 (1), 6900 (1), 6901 (1), and 6919 (2). The entry door threshold at the model unit primary entry door was | |
| | (2). The entry door threshold at the model unit primary entry door was observed uneven and 1.5-inches above the interior finished flooring, exceeding the maximum allowable level difference of 3/4 -inch for impervious construction (e.g. concrete). Leveling of the threshold between the interior finished floor of the dwelling unit and common hallway surface is required in order to comply with FHA. It should be noted that all other ground floor units were observed with compliant entry door thresholds (Non-Critical Repair). | |
| **Requirement 4: Accessible route into and through the covered unit** | | Thresholds from hardwood to carpet were not fully beveled were higher than 1/2" (should be no higher than 1/2" beveled) |

2

APPENDIX A

| | | |
|---|---|---|
| | | Interior threshold at balcony higher than 1" and not beveled.  It should be no higher than 1/2" and beveled |
| **Requirement 5: Environmental controls** | apartments. However, the HVAC controls in the ground floor dwelling units were observed mounted at a height of 54-inches above the finished floor, greater than the allowable maximum height of 48-inches. Relocating the controls to be mounted at a maximum height of 48-inches is required in order to comply with the FHA. GWB repair and painting will be required and is included in this cost (Non-Critical Repair) | Environmental controls were higher than 60".  Beyond reach range for forward (48" AFF) or side (54" AFF) approach. |
| | | Outlets in living room and bedrooms were all at 13" AFF to the center of outlets They should not be lower than 15" AFF. |
| **Requirement 6: Reinforced walls for grab bars** | Based on a stud finder scan, it appears that the toilets and showers do not feature wall blocking for optional installation of grab bars at a later date. Installation of reinforced grab bars will be required at the adaptable ground floor units per resident request. The installation of "Wing It" devices in lieu of retrofitting wall backing is an approved option per the United States Department of Justice Case Number CIV 01-432-N-EJL. If upon installation of grab bars at a residents request it is determined backing does not exist, the installation with the use of "Wing It" devices is acceptable. | |
| **Requirement 7: Usable kitchens and bathrooms kitchens** | fixtures. However the kitchen sinks in the ground floor dwelling units are located in a corner, were observed without removable base cabinetry, and do not provide the required 30"x48" centered forward or parallel clear floor space.  The installation of removable base cabinetry is required in order to comply with the FHA. The bathrooms in the ground | Kitchen sink is also in the corner.  A centered parallel approach must be provided and very likely that the 30x48 CFS is not centered on sink even with the Spanos variance. (Bad design which makes it virtually impossible for person in w/c to load dirty dishes from sink into the dishwasher... but this is technically not a violation.  This is characteristic of MECA, who was same architect as Town Park.) |
| | | Kitchen dishwasher appears to be less than 2" from the corner. This is very close.  A 2' offset was allowed in Spanos and a forward approach is permitted with dishwashers.  So if the centerline of the dishwasher is 13" from the corner it would be acceptable under the Spanos variance. |
| | sink pipes is require to comply with FHA. In order to comply with FHA, the ranges would require front controls. The 2-bedroom dwelling unit does | Not required |
| **bathrooms** | required in order to comply with the FHA. The bathrooms in the ground floor 1-bedroom and 2-bedroom (hall and master bathroom) dwelling units were observed with 32 to 36-inch vanities, centered 16 to 18-inches from the adjacent side wall, and without removable base cabinets.  The vanities do not provide the required 30"x48" centered forward or parallel clear floor space at the sinks.  Installing removable base cabinets or an offset vanity, centered 24" from the adjacent side wall, is required in order to comply with FHA.  In addition, upon removal of the base | 2 bedroom: Both bathrooms are specification A (toilet beside the tub). All fixtures must be usable in both bathrooms.  In one bathroom, the centerline of lavatory to closed door is 16" and should be 24" for side approach. Cabinets not removable |

3

APPENDIX A

| | | |
|---|---|---|
| | order to comply with FHA.  In addition, upon removal of the base cabinets, installation of scald and abrasion protection at the exposed sink pipes is require to comply with FHA. In order to comply with FHA, the | |
| | ranges would require front controls. The 2-bedroom dwelling unit does not feature clear floor space at the master bedroom plumbing fixtures. In order to comply with FHA, reversal of the bathroom door swing to open into the bedroom is recommended to allow the appropriate 30"x48" clear floor space at the bathroom plumbing fixtures (Non-Critical Repairs) | |

4